[Nos. E028904, E029176, E030039. Fourth Dist., Div. Two. Apr. 24, 2002.]

In re RANDALYNNE G., a Person Coming Under the Juvenile Court Law.
RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, Plaintiff and Respondent, v.
RANDAL G. et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.

1158

**Counsel**

Michael D. Randall, under appointment by the Court of Appeal, for Defendant and Appellant Lynn M.

Linda M. Fabian, under appointment by the Court of Appeal, for Defendant and Appellant Randal G.

William C. Katzenstein, County Counsel, and Julie A. Koons, Deputy County Counsel, for Plaintiff and Respondent.

Kathleen Murphy Mallinger, under appointment by the Court of Appeal, for Minor.

## OPINION

**HOLLENHORST, Acting P. J.**—Appeal No. E028904 is the father's appeal from a December 11, 2000, order denying a petition filed under Welfare and Institutions Code section 388.[1] The father contends the juvenile court abused its discretion in summarily denying his petition without a hearing because his petition made a prima facie showing of changed circumstances and the proposed order, which would have granted him reunification services, was in the best interests of the child. The father also argues that he was improperly denied any reunification services.

Appeal No. E028904 also includes the mother's appeal from a December 13, 2000, order denying her section 388 petition. The mother's petition sought additional reunification services. The mother contends the summary denial of her section 388 petition violated her due process rights.

In appeal No. E029176 both the mother and father appeal from a March 14, 2001, order establishing a guardianship for the minor after a section 366.26 hearing. The mother contends that the legal guardianship proceedings were fundamentally unfair. She also contends she was denied her right to effective assistance of counsel when the juvenile court denied her *Marsden*[2] motion. The father does not present a separate argument on this issue but rather argues that the guardianship order improperly delegated complete discretion to the guardian to allow visitation or not.

Appeal No. E030039 is the mother's appeal from a July 5, 2001, order denying her additional visitation with the minor. The mother contends that the juvenile court's postguardianship visitation order should be reversed. She also contends the trial court violated her due process rights when it required her to file a section 388 petition after granting a hearing on her visitation request.

---

[1]Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

[2]*People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44].

## I. Facts and Procedural History

The minor, Randalynne G., was born in February 1999. The baby and her mother tested positive for methamphetamine at birth, and a petition was promptly filed to declare the baby a ward of the juvenile court. Specifically, the petition alleged a failure to protect under section 300, subdivision (b), in that the mother had abused a controlled substance, the baby had tested positive for a controlled substance at birth, the mother had endangered the baby's well-being by breast-feeding the baby, and the father also had a history of controlled substance abuse.

The baby was detained and placed with the father on certain conditions, and the mother was allowed to live in the home on certain conditions. However, the mother was arrested on March 8, 1999, for possession of marijuana and transferred to Los Angeles County on five outstanding warrants.

A jurisdictional hearing was held on April 14, 1999. The mother, who was out of jail, was ordered not to reside with the baby until she enrolled in a drug treatment program and had two clean drug tests.

A disposition hearing on May 5, 1999, resulted in the baby being declared a dependent child of the court. The mother was allowed to reside in the home if she completed a clean drug test. Reunification plans were adopted for both parents.

On July 22, 1999, the father was arrested in Los Angeles County for grand theft and other alleged crimes. On July 30, 1999, the Riverside County Department of Public Social Services (Department) filed a supplemental petition under section 387. The baby was then ordered placed in a foster home. However, the mother absconded with the child and a warrant was issued. The mother was subsequently contacted but refused to surrender the baby to the social worker.[3] The baby was eventually located on August 23, 1999, and placed in foster care. The mother was arrested. The mother had left the baby with a babysitter for a day but had failed to return. At that time, the father was in Wasco State Prison.

A review hearing was held on November 8, 1999. The first allegation in the supplemental petition, that the father was incarcerated, was found to be true, and the minor was ordered detained pursuant to section 387.

A contested review hearing was held on February 23, 2000. The court terminated reunification services to the father because he was serving a

---

[3]The mother denied that she had attempted to hide the baby from the Department.

two-year prison sentence. However, it ordered services to continue for the mother for an additional six months, retroactive to November 8, 1999. The Department was also ordered to facilitate visitation between both parents and the baby.

A further review hearing was held on May 5, 2000. After hearing testimony from the mother and the social worker, the court terminated reunification services to the mother and set the case for a section 366.26 hearing.

The section 366.26 hearing was held on September 5, 2000. The Department found that the child was not adoptable and recommended a plan of long-term foster care with the current caretaker.[4] The juvenile court agreed and ordered a permanent plan of long-term foster care.

A review hearing was held on November 6, 2000. By this time, the father was out of jail and had restarted his automobile repossession business. The parents were visiting the child monthly under supervision, and they were insistently seeking increased visitation and return of the child to their custody. The court ordered increased visitation of twice a month and set a section 366.26 hearing to consider a change in the permanent plan to legal guardianship. The social worker reported a diagnosis of fetal alcohol syndrome, although the mother denied that she used alcohol during her pregnancy.

On December 11, 2000, the father filed a petition under section 388 requesting that the court order resumption of reunification services to him. As discussed below, the petition was summarily denied.

The mother then filed her own section 388 petition on December 13, 2000. She also requested resumption of reunification services. As discussed below, the petition was summarily denied.

In a report filed January 13, 2001, the Department recommended that the current caretaker be appointed as legal guardian of the child. The social worker noted a very close attachment between the child and the caretaker.

The second section 366.26 hearing was held on March 14, 2001. At the beginning of the hearing, the mother expressed dissatisfaction with her

---

[4]The recommendation was due to alleged medical problems and developmental delays. However, in a report by the same social worker only four months earlier, there was no hint of either medical or developmental problems, and the child was found to be an excellent candidate for adoption. The difference is explained by a public health nurse's report dated June 8, 2000, discussed below, which found significant developmental problems that required a full medical assessment.

attorney and a *Marsden* hearing was held. The court denied the mother's *Marsden* motion and the mother challenges that decision on appeal.

The mother read a statement to the court, and the court noted that the parents were attempting to get their life together, and that the child had gotten outstanding treatment and care from the foster mother. As the basis for its findings, the court said: "[W]hen I try to balance everything, which is always difficult for the Court, especially when the Court sees that the parents are making real positive changes or trying to make positive changes in their lives, but by the same token, the time just keeps running on for the child while everybody is waiting for the parents to, hopefully, finally get everything turned around."

The court then noted that over two years had elapsed since the original detention. It appointed the caretaker as legal guardian but found that termination of parental rights would be detrimental to the child because "[t]he child is living with a . . . foster parent who is unable or unwilling to adopt because of exceptional circumstances, but is willing and able to provide the child with a stable and permanent home, and removal would be detrimental to the child." The parents challenge a further provision of the order which states that visitation "shall be . . . as directed by the legal guardian(s)."

A postpermanent plan review hearing was held on May 21, 2001. According to the social worker's report, there had been no change in circumstances and the only controversy was over visitation. The guardian would prefer no visits with the parents and the parents desired unlimited access to the child in the guardian's home. Accordingly, the court set the matter for a contested hearing on visitation for July 5, 2001.

The hearing on visitation issues was held on July 5, 2001. The court noted that it had previously ordered that visitation be as directed by the legal guardian. The Department was assisting by providing supervised visitation at the Department once every two or three weeks. The parents sought greater, and unsupervised, visitation of four to six hours a week. The mother's counsel argued that she was entitled to reasonable visitation because the permanent plan of guardianship had been selected. The court refused to change the visitation order. The mother appeals.

II., III.*

* * * * * * * * * * * * * * * * * * * * * * * * * *

*See footnote, *ante*, page 1156.

## IV. THE VISITATION ORDERS DURING THE GUARDIANSHIP (E030039)

### 1. *The March 14, 2001 Hearing.*

The second section 366.26 hearing was held on March 14, 2001. In a report prepared for that hearing, and filed in January 2001, the social worker said: "Given the history, the prospective guardian is not anxious to have to deal with the parents. She is not opposed to visitation but would ask the Department to continue the visitation arrangements; i.e. to transport the child to the visits and supervise the visits." The social worker recommended guardianship as the appropriate permanent plan but stated: "It is conceivable that the plan of legal guardianship might be upgraded to adoption once the child's medical situation is sorted out."

The juvenile court selected guardianship as the appropriate permanent plan. It also ordered that the dependency remain open. (§ 366.3, subd. (a).) When a guardianship is established, the juvenile court must make a visitation order: "The court shall also make an order for visitation with the parents . . . unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child." (§ 366.26, subd. (c)(4).)[7]

No such finding of detriment was made here. Instead, the court said: "Visitation between the child and mother and father shall be as directed by the legal guardian in this case."

The parents attack this order. The father contends the trial court improperly delegated its power to determine if visitation occurred to the guardian. Second, he argues that the guardian was not interested in facilitating visitation because she did not want to have to deal with the parents. The mother also argues that a specific visitation order was required.

---

[7]The minor's counsel cites the recent case of *In re Jasmine P.* (2001) 91 Cal.App.4th 617 [110 Cal.Rptr.2d 562]. In that case, our colleagues in Division Three interpreted section 366.26, subdivision (c)(4) narrowly: "[I]t was only intended to require either an order of visitation or a finding of detriment to the child where a particular circumstance exists. Specifically, *if* a dependent child has been living with a relative or a foster parent who will provide a stable and permanent environment, but who is not willing to become a legal guardian, *then* the child shall not be removed from that home, if to do so would be detrimental. And in that circumstance, where the child is left in long-term foster care and *not* in a legal guardianship, *then* the juvenile court shall order visitation with the *parents or guardians* unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child." (*Id.* at p. 621.) However, California Rules of Court, rules 1463 and 1465(d) do not limit a visitation order to this particular situation, and we disagree with our colleagues' narrow reading of the section. In our view, section 366.26, subdivision (c)(4) requires a visitation order whenever the permanent plan is guardianship, unless the court finds that such visitation would be detrimental to the child.

■ A court may not delegate its discretion to determine whether any visitation will occur, but it may delegate decisions such as the time, place and manner of visitation. For example, in the leading case of *In re Danielle W.* (1989) 207 Cal.App.3d 1227 [255 Cal.Rptr. 344], the juvenile court ordered that all visitation would be at the social worker's discretion and the children's discretion. (*Id.* at p. 1233.) The appellate court found that the order did not delegate all control over visitation, but rather ordered visitation under specific conditions. The appellate court found that the department could properly act as an arm of the court in implementing the visitation order: "It was within the Department's role as a representative of the state and as an arm of the court, as empowered by the Legislature, to exercise limited discretion in the administration of the juvenile court's visitation order." (*Id.* at p. 1235.)

The appellate court also rejected the argument that the order violated the separation of powers doctrine, and that it was an improper delegation of judicial power. (*In re Danielle W., supra,* 207 Cal.App.3d 1227, 1235-1237.) There was no improper delegation to the children because they were only allowed to express their views regarding visitation. The order was also interpreted as authorizing the department to administer the details of visitation: "Although the order grants the Department some discretion to determine whether a specific proposed visit would be in the best interests of the child, the dominant factor in the exercise of that discretion is the desire of the child to visit the mother." (*Id.* at p. 1237.)

As so interpreted, the order was valid because the department's role was limited and subject to supervision. However, the court noted that "a visitation order granting the Department *complete* and *total discretion* to determine whether or not visitation occurs would be invalid. . . . The juvenile court must first determine whether or not visitation should occur, as was done here, and then provide the Department with guidelines as to the prerequisites of visitation or any limitations or required circumstances." (*In re Danielle W., supra,* 207 Cal.App.3d 1227, 1237, fn. omitted.) With regard to due process concerns, the court said: "As administrator of the court's order, the parole officer or Department is subject to the supervision of the juvenile court which provides the parent with the required due process." (*Id.* at p. 1238.)

Other cases emphasize the distinction between a proper delegation to a social worker of the administration of a visitation order and an improper delegation to a social worker to determine whether or not visitation occurs. For example, in *In re Kristin W.* (1990) 222 Cal.App.3d 234 [271 Cal.Rptr. 629], the court did not make any orders regarding visitation and declined to

consider the issue. The court held that "[t]he absence of an order concerning visitation is akin to an order granting total discretion." (*Id.* at p. 256.) The case was remanded for reconsideration of the visitation issue.

The rule was restated in *In re Moriah T.* (1994) 23 Cal.App.4th 1367 [28 Cal.Rptr.2d 705], as follows: "[T]he juvenile court may delegate to the probation officer or social worker the responsibility to manage the details of visitation, including time, place and manner thereof. [Citations.] As stated in *Jennifer G.* [(1990) 221 Cal.App.3d 752, 757 [270 Cal.Rptr. 326]], the ministerial tasks of overseeing visitation as defined by the juvenile court 'can, and should, be delegated to the entity best able to perform them, here the department of social services.' [Citation.] 'Such matters as time, place and manner of visitation do not affect the defined right of a parent to see his or her child and thus do not infringe upon the judicial function.' [Citation.] Only when a visitation order delegates to the probation officer or county welfare department the absolute discretion to determine whether any visitation occurs does the order violate the statutory scheme and separation of powers doctrine. [Citations.]" (*Id.* at p. 1374.) In *Moriah T.*, the appellate court approved an order which ordered regular visitation and delegated to the department the responsibility to arrange for and monitor visitation. The appellate court held that the order did not have to specify the frequency and length of visits.

In *In re Julie M.* (1999) 69 Cal.App.4th 41 [81 Cal.Rptr.2d 354], the appellate court invalidated an order which gave the children absolute discretion to decide if the mother could visit them. (*Id.* at pp. 48-49.) The court found the order "essentially delegated judicial power to the children—an abdication of governmental responsibility . . . ." (*Id.* at p. 49.)

 The Department contends that the order here was proper because the juvenile court defined the parents' right to visit, and only ordered the guardian to direct visitation.

We disagree. The juvenile court's order was improper because it left the entire issue of visitation in the hands of the guardian. It did so even though it had before it the social worker's report, which states that the guardian did not want to be involved in visitation and the guardian was requesting that the Department continue to administer visitation. In light of this fact, it would be disingenuous to claim that the guardian was merely administering visitation.

The essence of the judicial function is to define the rights of the parents in the light of the circumstances: "[T]he court must define the rights of the parties to visitation. The definition of such a right necessarily involves a

balancing of the interests of the parent in visitation with the best interests of the child. In balancing these interests, the court in the exercise of judicial discretion should determine whether there should be any right to visitation and, if so, the frequency and length of visitation. The court may, of course, impose any other conditions or requirements to further define the right to visitation in light of the particular circumstances of the case before it." (*In re Jennifer G., supra*, 221 Cal.App.3d 752, 757.[8]) The court here did not define the rights of the parents to visitation.

Since the juvenile court did not make any order that the parents were entitled to visitation at the March 14th section 366.26 hearing, its order cannot be justified under the cases that allow the Department to supervise visitation if the court has determined that the parents have a right to visitation. Second, the delegation here was to a private party, not the Department. The parties have not cited any cases that allow a guardian to control visitation, and our research has not found any such cases.

■ Even if the juvenile court had determined the parents had a right to reasonable visitation, delegations to private persons to control visitation have not generally been upheld because such persons are not as accountable to the court as a child protective services agency. This is primarily because the delegation to a private person does not contain any of the government imprimatur that tends to validate administration of a visitation order by the department. (Cf. *In re Danielle W., supra*, 207 Cal.App.3d 1227, 1236-1237.)

In *In re Donnovan J.* (1997) 58 Cal.App.4th 1474 [68 Cal.Rptr.2d 714], the court held that delegation to a therapist to determine when visitation would occur was improper. (*Id.* at pp. 1476-1478.) The court cited our Supreme Court's opinion in *In re Chantal S.* (1996) 13 Cal.4th 196 [51 Cal.Rptr.2d 866, 913 P.2d 1075]. In that case, our Supreme Court rejected an improper delegation challenge but "implicitly recognized that an order may be improper for delegating judicial authority to a private therapist. This is consistent with findings of improper delegations of judicial authority to private individuals in other contexts, and with the prohibition in the California Constitution against delegation of duties other than subordinate judicial duties. [Citations.]" (*In re Donnovan J., supra*, 58 Cal.App.4th 1474, 1477.) A similar order was invalidated in *In re Shawna M.* (1993) 19 Cal.App.4th 1686 [24 Cal.Rptr.2d 126] and another order was disapproved in dicta in *In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1137-1139 [106 Cal.Rptr.2d 465].

---

[8]There has been some controversy as to whether the court's visitation order must specify the frequency and length of visitation. (See, e.g., *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1009 [57 Cal.Rptr.2d 861]; *In re Moriah T., supra*, 23 Cal.App.4th 1367, 1375.) The issue is not important here because the court gave full discretion to the guardian.

In *In re Julie M., supra,* 69 Cal.App.4th 41, the appellate court held that the juvenile court abused its discretion in giving the children absolute discretion to decide if the mother could visit with them. (*Id.* at pp. 48-51.)

■ The March 14th order, which states that visitation is to be as directed by the guardian, simply cannot be read as giving the parents a right to visitation, with supervision of the details by the guardian. "Reviewing the orders here at issue in light of our determination that the juvenile court has the sole power to define the right to visitation, we find the orders improper and inadequate in that they determine neither whether the parents have a right to visitation nor, assuming such a right was intended, the frequency and length of visitation." (*In re Jennifer G., supra,* 221 Cal.App.3d 752, 757, fn. omitted.)

Even if the juvenile court's order specified a right to visitation, the delegation to the guardian was improper. We therefore conclude the juvenile court abused its discretion in delegating the issue of visitation to the guardian, particularly when the court knew the guardian did not want to be involved in visitation, and the role of the Department in such visitation was not specified.

2. *The July 5, 2001 Hearing.*

The juvenile court's March 14th order was reviewed at a hearing held on May 21, 2001. The social worker's report for that hearing states: "The child currently visits with her parents in the office two times per month. The child finds this somewhat confusing. The guardian reports that Randalynne returns home agitated and confused. The guardian would prefer that there be no visits with the parents. The parents want unlimited access to the guardian and the child in the guardian's home."

A contested hearing on visitation was then set for July 5, 2001. At that hearing, the court emphasized that it was the guardian who had the authority to order visitation, and the Department could only assist visitation if the guardian wanted the Department to assist.[9]

---

[9]Specifically, the court asked whether visitation was being directed by the legal guardian. The mother's counsel replied negatively and the following colloquy occurred: "[Minor's counsel]: That's what the order is. [¶] [Mother's counsel]: That's what the order says, but it's being done through the auspices of the department. They are supervising at their office. [¶] [The Court]: That must be in agreement with the legal guardians, I would take it. [¶] [Minor's counsel]: Yes. [¶] [Father's counsel]: Actually, I think the legal guardian would prefer there be very limited contact or no contact whatsoever so I think the department has stepped in and

The mother's attorney asked for reasonable visitation, and argued that the present scheme of one or two hours a month supervised visitation was not reasonable.

The father's attorney argued that, since the guardian wanted no visitation, the only contact with the child resulted from the Department's assistance.

The court ruled: "We are past reunification. We are in a permanent plan now which happens to be legal guardianship at this time. [¶] So while it may be nice if the parents want to increase their visits, we are not at that stage. And certainly there's no 388 before the court that would somehow indicate to the court it's in the best interests of the child to do some kind of modification or change. So the court is going to just continue with the two times a month visits as they have been arranged and deny any increased visits in this case."

■ This ruling can be interpreted as a decision that the parents are entitled to two visits a month, supervised by the Department. As such, it would properly be a ruling on the parents' right to visitation, with the Department supervising the time, place, and manner of visitation. (*In re Christopher H., supra*, 50 Cal.App.4th 1001, 1008-1011.)

However, the juvenile court's emphasis on the guardian's continuing right to determine visitation, and the absence of any specific orders allowing the Department authority over visitation, raise the same delegation issues discussed above. In other words, the July 5th order specifically gave the parents the right to visitation, i.e., two supervised visits a month. This portion of the order cured one of the defects in the March 14th order by specifying that the parents had a defined right of visitation. However, the juvenile court continued to emphasize that visitation was at the discretion of the guardian, and this delegation of discretion continued to be improper. (*In re Jennifer G., supra*, 221 Cal.App.3d 752.)

■ The mother raises a related issue at this point. As noted above, even though the July 5th hearing was set as a contested visitation hearing, the court refused to consider an increase in visitation because "certainly there's no 388 before the court that would somehow indicate to the court it's in the best interests of the child to do some kind of a modification or change."

---

is assisting. [¶] [The Court]: They are not the ones, as far as I am concerned. That is not who I told had authority to direct visitation. They could assist. And that's fine if the legal guardians want them to assist. I don't see a problem with that."

Since the permanent plan of guardianship had been selected at the second section 366.26 hearing which was held on March 14th, the July 5th hearing was a postguardianship review hearing. The Department finds that "[t]here is no express statutory authorization for review hearings when a guardianship is established and the dependency remains open." Since section 366.3 governs review hearings after establishment of a guardianship, the Department argues that the child's stability was the court's foremost concern, and that the prior visitation order should not be modified unless such modification is in the child's best interests. This argument is based on section 388, and by analogy to section 366.3, subdivision (e)(8). Section 388 provides for modification if the modification is in the best interests of the child. Section 366.3, subdivision (e)(8), which deals with children age 16 and older, provides: "[I]t shall be presumed that continued care is in the best interests of the child, unless the parent or parents prove, by a preponderance of the evidence, that further efforts at reunification are the best alternative for the child."

From this foundation, the Department argues that increased visitation was not in the best interests of the child. It relies on the social worker's report for the May 21st hearing, quoted above: "The child currently visits with her parents in the office two times per month. The child finds this somewhat confusing. The guardian reports that Randalynne returns home agitated and confused. The guardian would prefer that there be no visits with the parents. The parents want unlimited access to the guardian and the child in the guardian's home." The Department therefore argues that the juvenile court did not abuse its discretion in refusing to increase visitation because such a modification was not in the child's best interests.

The mother argues that the best interests standard did not apply, and the trial court should have used the detriment to the child standard found in section 366.26, subdivision (c)(4). She therefore argues the trial court used the wrong legal standard in making its decision.

We disagree. The two standards are basically two sides of the same coin. What is in the best interests of the child is essentially the same as that which is not detrimental to the child. We therefore reject the argument that reversal on this ground is required.

The mother then focuses on the juvenile court's remark that there was no section 388 petition before it. She argues that the court violated due process when it required her to file a section 388 petition to obtain increased visitation. Since the July 5th hearing was set as a hearing on contested

visitation issues, she argues the court erred in denying her request for increased visitation because a section 388 petition had not been filed. Similarly, she argues that she had no meaningful opportunity to be heard at the July 5th hearing because the trial court evaluated her request for increased visitation based on whether or not a section 388 petition had been filed.

We again disagree. The juvenile court did not deny the mother's request for increased visitation on grounds that no section 388 petition had been filed. Instead, it merely found that the offer of proof submitted by the parents was insufficient to justify increased visitation at this stage of the proceedings. This is similar to the situation after termination of reunification services: "The presumption that arises after termination of reunification services is a rebuttable one. It is presumed, at that point, that continued care is in the best interest of the child. The parent, however, may rebut that presumption by showing that circumstances have changed that would warrant further consideration of reunification." (*In re Marilyn H.,* (1993) 5 Cal.4th 295, 310 [19 Cal.Rptr.2d 544, 851 P.2d 826].) The parents simply failed to provide enough evidence in their offers of proof to justify an increase in visitation.

Nevertheless, the delegation problem remains. As the father's counsel pointed out at the hearing, the parents and the guardian had a "fractious relationship." Allowing the guardian to control visitation was putting control of visitation in the hands of a person in an adversary position to the parents: "[I]t certainly would be improper to permit an adversary to adjudicate the rights of a parent [citation], . . ." (*In re Jennifer G. supra,* 221 Cal.App.3d 752, 759.)

In this posture, we believe the prudent course is to reverse the visitation order and remand the issue to the juvenile court for further consideration of the visitation issues. "We recognize, however, that more than a year has transpired since this visitation order was made and that circumstances may have changed in the interim. On remand, the juvenile court should consider . . . current circumstances in crafting any new visitation order." (*In re Shawna M., supra,* 19 Cal.App.4th 1686, 1691.)

## V. Disposition

In E028904, the orders of December 11, 2000, and December 13, 2000, which denied the parents' section 388 petitions, are affirmed.

In E029176, the March 14, 2001, orders, which denied the mother's *Marsden* motion and selected guardianship as the permanent plan are affirmed.

In E030039, the July 5, 2001, postguardianship visitation order is reversed and the case is remanded for further proceedings on the visitation issues in accordance with the views expressed herein.

Richli, J., and Gaut, J., concurred.

A petition for a rehearing was denied May 14, 2002, and the opinion was modified to read as printed above.