127 Cal.Rptr.2d 67 (2003)
103 Cal.App.4th 739
In re S.B., et al., Persons Coming Under the Juvenile Court Law.
Los Angeles County Department of Children and Family Services, Plaintiff and Respondent,
v.
S.M., Defendant and Appellant.
No. B154825.
Court of Appeal, Second District, Division Five.
November 12, 2002.
Review Granted January 22, 2003.
*68 Kathleen Murphy Mallinger, under appointment by the Court of Appeal, for Defendant and Appellant.
Lloyd W. Pellman, County Counsel, Gary P. Gross, Senior Deputy County Counsel, for Plaintiff and Respondent.
MOSK, J.
Defendant and appellant S.M. (mother) appeals from a juvenile court order entered at a Welfare and Institutions Code section 366.26[1] permanent plan hearing. The juvenile court ordered visits between mother and her daughter, S.B., "to be determined by the legal guardians." Under our interpretation of section 366.26, subdivision (c)(4), and the constitutional prohibition against delegating judicial duties, the juvenile court could not delegate to the legal guardians the decision whether visits would occur or the complete discretion to determine the time, place, and manner of any visits. Accordingly, we reverse the visitation order.

FACTUAL BACKGROUND
S.B. and her brother were detained pursuant to a petition filed in November 1999 by the Department of Children and Family Services (the department).[2] Over approximately the next two years, mother, who suffered from a psychiatric disorder, did not maintain the visitation schedule ordered by the juvenile court. Mother reportedly verbally abused S.B., and S.B.'s foster mother said that "the less [S.B.] sees her mother the better off [S.B.] is."
The juvenile court terminated family reunification services for mother on July 2, 2001. At the November 27, 2001 section 366.26 hearing, the juvenile court did not terminate mother's parental rights. It established *69 a "permanent plan"[3] by which the juvenile court appointed legal guardians for S.B. S.B.'s counsel requested that "visitation with her mother be left up to [S.B.] and the legal guardian."
The juvenile court's minute order stated, "Visitation between mother and [S.B.] to be determined by the legal guardians." A contemporaneous written order stated that "[visitation between the child and mother [s]hall be: [S.B.] may have visitation with her mother as deemed by the legal guardian to be in her best interest." There was no objection to the visitation order. Although mother was present in the courthouse, she failed to appear when called, and mother's counsel did not assert any objection. [S.B.'s] guardians signed a form "acknowledgment of power and duties of legal guardian (juvenile)" that stated they would "make all decisions concerning parental visits with the minor including promoting or limiting such visitation according to the best interests of the minor or as ordered by the court."
On appeal, mother contends that the juvenile court's visitation order fails to comply with section 366.26, subdivision (c)(4), because that subdivision specifies that a court must make a visitation order when it selects a permanent plan of legal guardianship unless visitation would be detrimental to the child's physical or emotional well-being.

DISCUSSION

This Court May Consider the Issues Raised on Appeal.
The issues mother raises on appeal concern the interpretation and application of statutory and constitutional provisionspure issues of law. We may address such issues notwithstanding the mother's failure to object below. The "objection/waiver rule is generally not applied when the alleged error involves a pure question of law, which can be resolved on appeal without reference to a record developed below." (People v. Williams (1999) 77 Cal.App.4th 436, 460, 92 Cal.Rptr.2d 1.) "An appellant may be permitted to change his theory when a question of law alone is presented on the facts appearing in the record." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 407, p. 459.)
In addition, "[reviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile or wholly unsupported by substantive law then in existence." (People v. Welch (1993) 5 Cal.4th 228, 237, 19 Cal.Rptr.2d 520, 851 P.2d 802.) At the time of the section 366.26 hearing, Division Three of this court had issued its opinion in In re Jasmine P. (2001) 91 Cal.App.4th 617, 110 Cal.Rptr.2d 562 (Jasmine P.), holding that the juvenile court does not have to make a visitation order when a child has been placed in a guardianship. Mother's counsel may have relied on that opinionwith which we disagree in not objecting to the juvenile court's order regarding visitation.
Finally, "[a]ppellate courts are more inclined to consider such tardily raised legal issues where the public interest or public policy is involved." (Bayside Timber Co. v. Board of Supervisors (1971) 20 Cal.App.3d 1, 5, 97 Cal.Rptr. 431.) In this case, a determination of visitation *70 rights with respect to dependent children involves such a public interest and public policy. For these reasons, we consider the legal issues mother raises.

Section 366.26, Subdivision (c)U), Requires a Juvenile Court to Make a Visitation Order When the Permanent Plan Is Legal Guardianship.
The juvenile court ordered a permanent plan of legal guardianship, and, therefore, section 366.26, subdivision (c)(4), required the court to make either an order for visitation or a finding that visitation would be detrimental to the child. The juvenile court did not comply with that subdivision.
Section 366.26 requires a juvenile court to choose a permanent plan of adoption, legal guardianship, or long-term foster care for a child. If adoption is likely, parental rights shall be terminated. (§ 366.26, subd. (c)(1).) But if a parent has "maintained regular visitation and contact with the child and the child would benefit from continuing the relationship," the juvenile court will not terminate parental rights and shall order a plan of either legal guardianship or long-term foster care. (§ 366.26, subd. (c)(1)(A).) As noted, the court of appeal in Jasmine P., supra, 91 Cal.App.4th at page 621, 110 Cal. Rptr.2d 562, held that if the juvenile court selects legal guardianship as a permanent plan, the court need not make a visitation order.
Interpreting section 366.26, subdivision (c)(4),[4] the court of appeal in Jasmine P. held that the juvenile court must make a visitation order only if the child is placed in long-term foster care. The court of appeal interpreted the last sentence of subdivision (c)(4) requiring the juvenile court to determine visitation as applying only to long-term foster care referred to in the preceding sentence. The court of appeal said that the reference in the last sentence to visitation "with the parents or guardians" supported its interpretation of the visitation provision because the statute would not require a juvenile court to order visitation with a guardian when the child is already in a guardian's custody. The court of appeal reasoned that the visitation provision only applies when a child is in the custody of foster parents and the child would, in that situation, visit "with the parents or guardians."
We disagree with the Jasmine P. court's interpretation of section 366.26, subdivision (c)(4). Subdivision (c)(4) requires a court to make two orders. The subdivision's initial sentence requires a court to determine whether the child should be placed in either long-term foster care or legal guardianship. There is no other provision *71 for an order until the section's last sentence requiring a court to make an additional order for visitation. That sentence provides: "The court shall also make an order for visitation with the parents or guardians unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child." (§ 366.26, subd. (c)(4), italics added.) This second order required by the statute is not dependent on whether the child is placed in long-term foster care or in legal guardianship. The order must be made in both circumstances. (In re Randalynne G. (2002) 97 Cal.App.4th 1156, 1163, 118 Cal. Rptr.2d 880, fn. 7 (Randalynne G.) [disagreeing with the Jasmine P. court's interpretation of subdivision (c)(4)]; see also Cal. Rules of Court, rules 1463(d), 1465(d).) The reference to visitation with "parent or guardian" in the last sentence of subdivision (c)(4) acknowledges that a child can be removed from a parent or from a guardian (see, e.g., § 361.5, subd. (a)), and that it may be desirable that the guardian from whom a child was removed be entitled to visitation with that child placed with another guardian.
To find that an order of visitation must be made only when a child has been placed in foster care would render meaningless the showing a parent might make under subdivision (c)(1)(A)namely, a showing that the parent or guardian visited the child regularly and that the child would benefit from "continuing" the relationship. Under the result in Jasmine P., a court could find, under subdivision (c)(1)(A), that parental rights should not be terminated because the parent has maintained regular visits, the continuance of which would benefit the child; but, then, the court could refuse to order visits because the child has been placed in a legal guardianshipnotwithstanding the court's conclusion that visits would be beneficial to the child.
There is no apparent reason why visitation would be ordered when a child is placed in long-term foster care, but not when a child is placed with a legal guardian. Continuing contact with a child's former caretaker, whether parent or guardian, may be as beneficial to a child placed with a legal guardian as it is to a child placed in long-term foster care. Thus, section 366.26, subdivision (c)(4), imposes a duty on a court to make an order for visitation in cases in which a minor has been placed in either long-term foster care or legal guardianship, unless the court finds that visitation would be detrimental to the child's physical or emotional wellbeing. The juvenile court's order here did not comply with that duty.

The Juvenile Court's Order Was Not a Proper Visitation Order Because the Juvenile Court Delegated to Legal Guardians Its Duty to Determine Visitation Rights of Parents or Guardians.
The juvenile court's order that "visitation between mother and S.B. to be determined by the legal guardians" improperly delegated to S.B.'s legal guardians both the decisions of whether visits would take place and, if so, the time, place, and manner of visits. (Randalynne G., supra, 97 Cal.App.4th 1156, 118 Cal.Rptr.2d 880.)
The California Constitution prohibits delegation of judicial duties other than subordinate ones. (Cal. Const, art. VI, § 22; In re Donnovan J. (1997) 58 Cal. App.4th 1474, 1477, 68 Cal.Rptr.2d 714.) "[D]elegations to private persons to control visitations have not generally been upheld because such persons are not as accountable to the court as a child protective services agency" and they lack "the government imprimatur that tends to validate administration of a visitation order by the department." (Randalynne G., supra, *72 97 Cal.App.4th at p. 1166, 118 Cal. Rptr.2d 880; In re Donnovan J., supra, 58 Cal.App.4th at pp. 1476-1477, 68 Cal. Rptr.2d 714: [court improperly delegated full discretion to therapist regarding father's visitation]; cf. In re Danielle W., supra, 207 Cal.App.3d at p. 1237, 255 Cal. Rptr. 344 [proper to delegate control over administration of the details of visitation to the department].)
Thus, a juvenile court must decide whether visitation will occur. (Randalynne G., supra, 97 Cal.App.4th 1156, 118 Cal.Rptr.2d 880; In re Jennifer G. (1990) 221 Cal.App.3d 752, 756, 270 Cal.Rptr. 326 ["There is no question but that the power to regulate visitation between ... dependent children (citation) and their parents rests in the judiciary"]; In re Danielle W. (1989) 207 Cal.App.3d 1227, 1237, 255 Cal. Rptr. 344 [order granting the department the "complete and total discretion to determine whether or not visitation occurs would be invalid"].) A juvenile court does not fulfill its duty of determining whether visitation will occur when it orders that visitation "`shall be ... as directed by the legal guardian(s).'" (Randalynne G., supra, 97 Cal.App.4th at pp. 1162-1163, 1165, 118 Cal.Rptr.2d 880; In re Jennifer G., supra, 221 Cal.App.3d at pp. 755, 757, 270 Cal.Rptr. 326 [order stating that visitation with parents "be under the direction of the Department Social Services" was improper because order did not specify whether parents had visitation rights or, if so, frequency and length of visits]; cf. In re Moriah T. (1994) 23 Cal.App.4th 1367, 1371, 1374, 28 Cal.Rptr.2d 705 [order that did not give Child Protective Services power to determine whether visits occurred was proper, although juvenile court may delegate to social worker responsibility to manage details of visitation].)[5]
The juvenile court here did not decide whether visits with mother would occur. Instead, the juvenile court's written orders state that visits shall be "as deemed by the legal guardians in her best interest" and are "to be determined by the legal guardians." At the section 366.26 hearing, S.B.'s counsel said she was "just asking for [S.B.], visitation with her mother be left up to [S.B.] and the legal guardian," to which the juvenile court responded, "Okay." The legal guardians acknowledged they would "make all decisions concerning parental visits with the minor including promoting or limiting such visitation according to the best interests of the minor or as ordered by the court."
The juvenile court's order thus improperly gave total discretion to S.B.'s legal guardians to decide whether there were to be visits and to control the time, place, and manner of visits, if any. It is the juvenile court that must decide whether there is to be visitation with a dependent child. The last sentence of section 366.26, subdivision (c)(4), specifies that the juvenile court "shall also make an order for visitation." (Italics added.) It does not say an order "regarding" or "concerning" visitation. Because the juvenile court is required to order visitation unless it finds "that visitation would be detrimental to the physical or emotional well-being of the child" (§ 366.26, subd. (c)(4)), the responsibility for visitation cannot be assigned to guardians who could eliminate or undermine any *73 visitation. Some may believe that giving a guardian total control over visitation would be beneficial. The Legislature did not. Instead, the Legislature determined that in the absence of a showing of detriment to the child, such visitation by a parent or prior guardian is desirable. We may not disregard this legislative determination.
The Legislature's conclusion is justified because delegating total discretion to legal guardians to determine all aspects of visitation, including the time, place, and manner of visitation, is the equivalent of making no visitation order and can result in the elimination of any visitation. Legal guardians often have positions and interests adverse to the parent from whom the child has been removed, a situation that existed here. The department noted that S.B.'s legal guardians had "not always cooperated with the visitation plan." By setting no parameters on the legal guardians' discretion to control visitation between S.B. and her mother, the legal guardians could decide that no visits were in S.B.'s best interests. (In re Jennifer G., supra, 221 Cal.App.3d at p. 759, 270 Cal.Rptr. 326 ["it certainly would be improper to permit an adversary to adjudicate the rights of a parent (citation), ..."].) Thus, the legal guardians, and not the juvenile court, would be making the determination required by section 366.26, subdivision (c)(4), as to whether visitation will or will not occur.
Although it was improper for the juvenile court to issue an order permitting the legal guardians to determine whether or not visitation would occur and in what manner it would occur, we do not suggest that legal guardians can play no role in deciding the time, place, and manner of visitation. Rather, we hold only that discretion to make those determinations may not be left entirely to legal guardians. On remand, if the juvenile court does not find that visitation with mother would be detrimental to S.B.'s physical or emotional wellbeing, then it is to make an order for visitation, including some guidance on the time, place, and manner of visitation.
Because the juvenile court made the visitation order approximately ten months ago and circumstances may have changed in the interim, the court should consider mother's and S.B.'s current circumstances in crafting any new visitation order.

DISPOSITION
The juvenile court's visitation order is reversed, and this matter is remanded to the juvenile court to make a visitation order unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child. If the juvenile court orders visitation, then it shall give guidance as to the time, place, and manner of visits.
I concur: ARMSTRONG, J.
TURNER, P.J., Dissenting.
I respectfully dissent from the reversal of the visitation order on the ground that Welfare and Institutions Code section 366.26, subdivision (c)(4)[1] prohibits a de *74 pendency court judge from allowing a long-term guardian to determine the extent of visitation of a dependent child with a biological parent. First, the question as to whether the issue of visitation should be left up to the guardians, raised for the first time on appeal, has been waived. Both the guardians testified at the Welfare and Institutions Code section 366.26 hearing where the long-term guardianship permanent plan was selected. Both guardians testified they understood that they would make decisions including "promoting or limiting [ ] visitation" as was in the child's best interests. No cross-examination concerning the visitation issue was conducted by the mother's counsel. The mother's counsel interposed no objection to that portion of the examination of the guardians concerning their responsibility to control visitation. After the examination was completed, the child's counsel asked that visitation be left up to the guardians. Again, the mother's counsel interposed no objection. The trial court ordered that the guardians determine the timing of visitation. For a third time when the subject was raised at the selection and implementation hearing, the mother's counsel did not object.
Under these circumstances, any objections to the trial court's visitation order have been waived. The California Supreme Court has held: "`An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the [trial] court by some appropriate method.... The circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppel or waiver.... Often, however, the explanation is simply that it is unfair to the trial judge and to the adverse party to take advantage of an error on appeal when it could easily have been corrected at the trial.' [Citation.]" (Doers v. Golden Gate Bridge etc. Dist. (1979) 23 Cal.3d 180, 184-185, fn. 1, 151 Cal.Rptr. 837, 588 P.2d 1261, original italics; accord, People v. Saunders (1993) 5 Cal.4th 580, 590, 20 Cal.Rptr.2d 638, 853 P.2d 1093, citing United States v. Olano (1993) 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 ["`"No procedural principle is more familiar to this Court than that a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." [Citation.]'"].)
The wide-ranging application of these fundamental principles of appellate litigation to dependency proceedings was explained by Presiding Justice Arthur G. Scotland in the decision of In re Dakota S. (2000) 85 Cal.App.4th 494, 502, 102 Cal. Rptr.2d 196 as follows: "Appellate courts have applied the waiver doctrine in dependency proceedings in a wide variety of contexts, including cases involving failures to obtain various reports required by statute. For example, in holding an appellant could not assert error in the failure of the juvenile court to conduct a bonding study where no objection had been made in the juvenile court, In re Lorenzo C. (1997) 54 Cal.App.4th 1330, 1338-1339 [63 Cal. *75 Rptr.2d 562] stated: `Many dependency cases have held that a parent's failure to object or raise certain issues in the juvenile court prevents the parent from presenting the issue to the appellate court. (See In re Aaron B. (1996) 46 Cal.App.4th 843 [54 Cal.Rptr.2d 27] [failure to object to adequacy of adoption assessment]; In re Kevin S. (1996) 41 Cal.App.4th 882, 885-886 [48 Cal.Rptr.2d 763] [failure to challenge [juvenile] court's ability to set a section 366.26 hearing when it determined reasonable reunification efforts were not made]; In re Anthony P. (1995) 39 Cal. App.4th 635, 640-642 [46 Cal.Rptr.2d 107] [failure to request sibling visitation as part of a permanent plan]; In re Daniel D. (1994) 24 Cal.App.4th 1823, 1830-1831 [30 Cal.Rptr.2d 245] [failure to request alternative placement]; In re Crystal J. (1993) 12 Cal.App.4th 407, 411-412 [15 Cal. Rptr.2d 613] [failure to object to adequacy of adoption assessment]; In re Jennilee T. (1992) 3 Cal.App.4th 212, 222 [4 Cal. Rptr.2d 101] [failure to object to qualifications of court-appointed psychologists regarding § 361.5, subd. (b)(2)]; In re Riva M. (1991) 235 Cal.App.3d 403, 411 [286 Cal.Rptr. 592] [failure to object to noncompliance with Indian Child Welfare Act]; In re Daniel C.H. (1990) 220 Cal.App.3d 814, 836 [269 Cal.Rptr. 624] [failure to object to juvenile court's amendment of pleading to conform to proof].) As some of these courts have noted, any other rule would permit a party to ... deliberately stand by in silence and thereby permit the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable. (In re Riva M., supra, 235 Cal.App.3d at p. 412 [286 Cal. Rptr. 592], citing In re Christian J. (1984) 155 Cal.App.3d 276, 279 [202 Cal.Rptr. 54].)"
Other decisions support Presiding Justice Scotland's waiver analysis. (In re Troy Z. (1992) 3 Cal.4th 1170, 1181, 13 Cal.Rptr.2d 724, 840 P.2d 266 [plea of no contest to § 300 petition foreclosed appellate challenge to sufficiency of the evidence]; In re Christopher B. (1996) 43 Cal.App.4th 551, 558, 51 Cal.Rptr.2d 43 [forum non conveniens contention waived because it was not raised in the trial court]; Steve J. v. Superior Court (1995) 35 Cal.App.4th 798, 810-811, 41 Cal. Rptr.2d 731 [department of social services' failure to dispute father's right to reunification services in trial court waives the issue]; In re Mark C. (1992) 7 Cal.App.4th 433, 446, 8 Cal.Rptr.2d 856 [father's failure to pursue issue waived claim expert psychological testimony should have been admitted at dispositional proceeding]; In re Richard H. (1991) 234 Cal.App.3d 1351, 1362, 285 Cal.Rptr. 917 [parent waived right to raise timeliness issues by failing to assert error in trial court]; In re Katrina L. (1988) 200 Cal.App.3d 1288, 1299, 247 Cal.Rptr. 754 [parent's failure to object to adequacy of oath waived issue]; In re Heidi T. (1978) 87 Cal.App.3d 864, 876, 151 Cal.Rptr. 263 [failure to object in superior court waived issue of right to separate counsel for minors].) Presiding Justice Scotland's analysis is controlling in this case. The visitation issue has been waived.
Second, even if the visitation issue were not waived, Welfare and Institutions Code section 366.26, subdivision (c)(4) does not require that the court set the parameters of parental visitation. One Court of Appeal, in a case where no petition for review was filed, has held the issue of the post Welfare and Institutions Code section 366.26 hearing visitation may not be delegated to a guardian. (In re Randalynne G. (2002) 97 Cal.App.4th 1156, 1164-1171, 118 Cal.Rptr.2d 880.) In the decision of In re Jasmine P. (2001) 91 Cal.App.4th 617, 621-622, 110 Cal.Rptr.2d 562, a case where a review petition was filed and denied, our *76 colleague Associate Justice Walter M. Croskey held that in the absence of a request by the mother, the juvenile court need not order visitation as part of a legal guardianship permanent plan order. Although the question is far from doubt, the dependency court, in a case where jurisdiction has not been terminated, may permit the guardian to control the time, place, and manner of visitation.
This is an issue of statutory interpretation. The statutory language is the best indication of the Legislature's intent. (Freedom Newspapers, Inc. v. Orange County Employees Retirement System (1993) 6 Cal.4th 821, 826, 25 Cal.Rptr.2d 148, 863 P.2d 218; People v. Jones (1993) 5 Cal.4th 1142, 1146, 22 Cal.Rptr.2d 753, 857 P.2d 1163.) The last sentence of Welfare and Institutions Code section 366.26, subdivision (c)(4) states, "The court shall also make an order for visitation with the parents or guardians unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child." The statutory language makes no reference to the type of visitation order that must be formulated; all that must be issued is "an order." Further, rule 1465(d)(2) of the California Rules of Court merely states, "The court may issue orders regarding visitation to the child by a parent or other relative." As can be noted, the rule permits the juvenile court to issue "orders regarding visitation."
Corroborating this analysis, the visitation language in Welfare and Institutions Code section 366.26, subdivision (c)(4) was adopted in 1988. (Stats.1988, ch. 1075, § 7, pp. 3476-3478.) The Legislative Counsel's Digest for Senate Bill No. 1860 in 1988 merely indicates the court is to "make orders for visitation"; nothing more. (Legis. Counsel's Dig., Sen. Bill No. 1860, 4 Stats. 1988 (1987-1988 Reg. Sess.) Summary Dig., p. 348.) Now it may be the Legislature has it wrongperhaps the juvenile court should specifically control visitation with biological parents in the context of long-term guardianship permanent plans. But the statutory language in Welfare and Institutions Code section 366.26, subdivision (c)(4) only requires the issuance of "an order" and in this case the trial court did that.
Moreover, the guardian's authority is essentially the same as a biological parent and vesting discretion in a party assuming the parental role makes good sense. The dependency law provides that a guardian's powers are those specified in Probate Code section 2100 et seq. (Welf. & Inst. Code, § 366.4.[2]) Probate Code section 2351, subdivision (a) describes in relevant part the powers of a guardian as follows: "[T]he guardian ... has the care, custody, and control of, and has charge of the education of, the ward...." (See Guardianship of Zachary H. (1999) 73 Cal.App.4th 51, 61, 86 Cal.Rptr.2d 7 ["It is the guardian, not the parent, who has the care, custody, and control of the child"]; 12 Witkin, Summary of Cal. Law (9th ed.1990) § 913, p. 969.) A guardian selects the residence of the ward. (Prob.Code, *77 § 2352, subd. (a)(1).[3]) A guardian can move a ward to any place in California without court permission. (Prob.Code, § 2352, subd. (a)(1).) In selecting a residence, the guardian must exercise discretion based on the best interests of the ward. (Prob.Code, § 2352, subdivision (a)(1); see 12 Witkin, Summary of Cal. Law (9th ed.1990) § 914, p. 970.) Further, medical decisions for a ward are made by a guardian. (Prob.Code, § 2353, subd. (a); see 12 Witkin, Summary of Cal. Law (9th ed.1990) § 915, p. 971.) No doubt, the juvenile court retains the power to regulate guardianship matters relating to visitation. (Guardianship of Zachary H., supra, 73 Cal.App.4th at p. 61, 86 Cal. Rptr.2d 7; Guardianship of Kaylee J. (1997) 55 Cal.App.4th 1425, 1431, 64 Cal. Rptr.2d 662.) But common sense suggests that a trial judge does not abuse discretion when allowing a guardian, who is vested with parental powers, to exercise discretion in controlling visitation with a biological parent. Pursuant to Welfare and Institutions Code sections 366.3[4] and 366.4, the juvenile court retains jurisdiction in the event problems with the guardian's management of visitation develop. (In re Marilyn H. (1993) 5 Cal.4th 295, 300, fn. 4, 19 Cal.Rptr.2d 544, 851 P.2d 826; In re Heradio A. (1996) 42 Cal.App.4th 569, 575, 49 Cal.Rptr.2d 713.)
Finally, there are good reasons in this case to allow the guardians to control visitation. Visitation issues are examined for an abuse of discretion. (In re Stephanie M. (1994) 7 Cal.4th 295, 318, 27 Cal. Rptr.2d 595, 867 P.2d 706; In re Jasmine D. (2000) 78 Cal.App.4th 1339, 1351-1352, 93 Cal.Rptr.2d 644.) Court ordered visitation to date, with its specified time frames, has caused substantial hardship to the child. Several examples will suffice to demonstrate why the trial court did not abuse its discretion in allowing the guardians to control visitation.
The child and her brother, Joseph M., came under juvenile court jurisdiction when they were repeatedly absent from school. A school district investigation revealed the mother: believed she was being followed by "people ... from Texas"; acted in an irrational manner when the subject of the absences were discussed with her; failed to provide the district with an *78 address for the children; and refused to attend conferences to address the children's absences from school. The sustained allegations of the November 22, 1999, petition were: the mother failed to insure the child and Joseph consistently attended school; the failure to do so had deprived the children of an ongoing education; the mother had failed to provide the child and Joseph with the necessities of life including adequate housing and furnishings; and the mother's emotional illness prevented her from regularly caring for the children.
The mother is very disturbed. She was uncooperative, hostile, and belligerent when directed to undergo a psychological examination. She refused to complete a psychological test. Her conduct when evaluated by a psychologist was consistent with paranoid thinking and her insight and judgment was suspect. Dr. Stephen A. Ambrose concluded the mother suffers from a "severe and debilitating psychiatric disorder." Dr. Ambrose described her as "mentally ill." After examining the mother in January and later in May 2001, Dr. Ambrose concluded: "[N]othing that I have learned through the interviewing and testing of [the mother] alters my overall view of this case as it was expressed in my original report. At the time of my last contact with [the mother] in January of 2001, I believed she was suffering from a severe and debilitating mental illness that significantly impaired her ability to ... provide a stable home life for her children."
The mother's mental illness had created a problematical visitation situation prior to the November 27, 2001, Welfare and Institutions Code section 366.26 hearing. On February 4, 2000, the child's attorney reported that the mother had not visited the child in two months. When the mother did visit, as ordered by the court, a social worker reported on April 20, 2000: "[The socialworker] stated that [the mother] saw both children on [March 4, 2000] and that during the visit mother spoke incessantly, straying from one thought to another. [The social worker] stated that mother's conversations were not complimentary for the children's self-esteem." Because the mother would often miss visits, the visitation process took "a toll" on the child and Joseph. The child had become ambivalent about visiting with the mother. The visitation problems escalated to the point where the mother would say hurtful things about the child during the visits. On one occasion, one of the guardians had to terminate the visit. The child even wrote a note asking the department to cancel a scheduled September 29, 2001, visit with the mother. Because of the child's apprehensions, she had undergone counseling on the very subject of visiting with the mother. The child had made some progress in dealing with this issue. Dr. Michael Parra concluded: "While [the child] struggles with depressed mood, she appears, nonetheless, to be capable of deciding if and when she would want to meet with [the] mother, and able to verbally assert that decision. Her verbal statements may be accepted as valid as she appears to have no apparent reason to falsify her desires and she does not appear to be an adolescent who is easily persuaded to act in a manner which is against her own real wishes. It is hoped that with ongoing treatment [the child] would be more interested in visitation at some point in the future."
The foregoing factual scenario explains why the child's best interests may be served by allowing the guardian to control the visitation schedule. One thing is certainthe court ordered visitation schedule has hurt the child. The dependency courts are not instituted to create visitation schedules which are hurtful to young boys *79 and girls. Government must help and nurture childrennot hurt them. The court ordered visitation schedule has done just that to the child. Without abusing discretion, the trial court could have reasonably concluded that visitation should occur when the guardian, who statutorily acts in the role of a parent, sets a time and place for the visits, no doubt after consulting with the child. To require the child to visit pursuant to a court ordered schedule when it is hurtful to her is not a course the Legislature had in mind when it adopted the visitation language in Welfare and Institutions Code section 366.26, subdivision (c)(4). No doubt, guardian scheduled visitation may not work out either. But Welfare and Institutions Code section 366.26, subdivision (c)(4) does not divest a juvenile court judge of the authority to try a new more flexible course, the purpose of which is to assist the child to reconcile some strong feelings of resentment directed at the mother who has failed to act like one. I would affirm the orders under review.
NOTES
[1] All undesignated statutory references are to the Welfare and Institutions Code.
[2] See generally §§ 300 [describing children who are subject to being detained in custody], 311 [detention hearing shall be set for any petition filed concerning a child retained in custody], 315 [further detention hearing].
[3] Section 366.26 provides for a hearing concerning the termination of parental rights in connection with selecting either a plan of adoption or guardianship or long-term foster care for dependent children of the court. This selection and implementation hearing is referred to as a "permanent plan hearing." (Cynthia D. v. Superior Court (1993) 5 Cal.4th 242, 249, 19 Cal.Rptr.2d 698, 851 P.2d 1307.)
[4] Subdivision (c)(4) provides, "If the court finds that adoption of the child or termination of parental rights is not in the best interest of the child, because one of the conditions in subparagraph (A), (B), (C), (D) or (E) of paragraph (1) or in paragraph (2) applies, the court shall either order that the present caretakers or other appropriate persons shall become legal guardians of the child or order that the child remain in long-term foster care. Legal guardianship shall be considered before long-term foster care, if it is in the best interests of the child and if a suitable guardian can be found. When the child is living with a relative or a foster parent who is willing and capable of providing a stable and permanent environment, but not willing to become a legal guardian, the child shall not be removed from the home if the court finds the removal would be seriously detrimental to the emotional well-being of the child because the child has substantial psychological ties to the relative caretaker or foster parents. The court shall also make an order for visitation with the parents or guardians unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child."
[5] The court in In re Moriah T., supra, at pages 1371 and 1376, 28 Cal.Rptr.2d 705, disagreed with In re Jennifer C. dictum that a visitation order must specify the frequency and length of visits. According to the court in Moriah T., "[v]isitation arrangements demand flexibility to maintain and improve the ties between a parent or guardian and child while, at the same time, protect the child's well-being." (Moriah T., supra, at p. 1376, 28 Cal.Rptr.2d 705.)
[1] Welfare and Institutions Code section 366.26, subdivision (c)(4) states: "If the court finds that adoption of the child or termination of parental rights is not in the best interest of the child, because one of the conditions in subparagraph (A), (B), (C), (D) or (E) of paragraph (1) or in paragraph (2) applies, the court shall either order that the present care-takers or other appropriate persons shall become legal guardians of the child or order that the child remain in long-term foster care. Legal guardianship shall be considered before long-term foster care, if it is in the best interests of the child and if a suitable guardian can be found. When the child is living with a relative or a foster parent who is willing and capable of providing a stable and permanent environment, but not willing to become a legal guardian, the child shall not be removed from the home if the court finds the removal would be seriously detrimental to the emotional well-being of the child because the child has substantial psychological ties to the relative caretaker or foster parents. The court shall also make an order for visitation with the parents or guardians unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child."
[2] Welfare and Institutions Code section 366.4 provides: "Any minor for whom a guardianship has been established resulting from the selection or implementation of a permanent plan pursuant to Section 366.25 or 366.26 is within the jurisdiction of the juvenile court. For those minors, Part 2 (commencing with Section 1500) of Division 4 of the Probate Code, relating to guardianship, shall not apply. If no specific provision of this code or the California Rules of Court is applicable, the provisions applicable to the administration of estates under Part 4 (commencing with Section 2100) of Division 4 of the Probate Code govern so far as they are applicable to like situations."
[3] Probate Code section 2352, subdivision (a) states in part: "(a) The guardian or conservator may fix the residence of the ward or conservatee at either of the following: [¶] (1) Any place within this state without the permission of the court. In fixing the residence, the guardian or conservator shall select the least restrictive appropriate setting which is available and necessary to meet the needs of the ward or conservatee, and which is in the best interests of the ward or conservatee."
[4] Welfare and Institutions Code section 366.3, subdivision (a) provides in part: "If a juvenile court orders a permanent plan of adoption or legal guardianship pursuant to Section 360 or 366.26, the court shall retain jurisdiction over the child until the child is adopted or the legal guardianship is established, except as provided for in Section 366.29. The status of the child shall be reviewed every six months to ensure that the adoption or legal guardianship is completed as expeditiously as possible. When the adoption of the child has been granted, the court shall terminate its jurisdiction over the child. Following establishment of a legal guardianship, the court may continue jurisdiction over the child as a dependent child of the juvenile court following the establishment of a legal guardianship or may terminate its dependency jurisdiction and retain jurisdiction over the child as a ward of the legal guardianship, as authorized by Section 366.4. If, however, a relative of the child is appointed the legal guardian of the child and the child has been placed with the relative for at least 12 months, the court shall, except where the relative guardian objects, or upon a finding of exceptional circumstances, terminate its dependency jurisdiction and retain jurisdiction over the child as a ward of the guardianship, as authorized by Section 366.4."