Filed 2/6/14  In re C.N. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re C.N., a Person Coming Under the Juvenile Court Law. | C073541 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.N.,<br><br>Defendant and Appellant. | (Super. Ct. No. JD216610) |

Jeannie N., mother of the minor, appeals from orders of the juvenile court selecting a permanent plan of guardianship for the minor.  (Welf. & Inst. Code,[1]

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

1

§§ 366.26, 395.)  Mother contends only that the court unlawfully permitted the minor to refuse to visit mother.  Disagreeing, we shall affirm.

## FACTS

A full recitation of the history of the case is unnecessary.  We previously detailed the circumstances which led to the minor's first dependency with a successful reunification in 2003 and the subsequent issues that resulted in the filing of the current petition in July 2009 in a prior appeal in this case (case No. C063333 filed October 7, 2010).  In the current proceeding, the juvenile court ultimately denied services for mother and placed the then 11-year-old minor in long-term foster care.  Mother had monthly visits with the minor.  At visits, mother made extravagant promises of gifts to the minor, actively manipulated him and disparaged his placement.

By mid-2012, the minor decided to request guardianship and the juvenile court set a selection and implementation hearing.  The minor wanted to speak to mother to help her understand his decision.  However, at a visit in June 2012, mother was very negative about the minor's decision.  Mother's reaction upset the minor because he wanted her to be supportive.  By the end of the year, the social worker filed a petition to suspend both visitation and telephone contact because the minor did not want to have contact with mother.  The petition alleged that, at a meeting in October 2012, the mother was not supportive of the minor's decision to be in a guardianship with the current caretakers and displayed no empathy toward him.  Further, on the minor's birthday, mother called police and made a false report about the conditions in the foster home, causing police to investigate and interview the minor which resulted in emotional trauma to the minor.  The minor's therapist concluded that continued contact with mother was detrimental to the minor.  The petition was later withdrawn.

The report for the selection and implementation hearing recommended a permanent plan of guardianship for the minor.  The report stated the minor was unwilling to attend the monthly visits with mother after October 2012.  It recommended a post

2

guardianship visitation order which provided in pertinent part: "The mother, Jeannie N[.] shall have visit[s] with the child, Christopher N[.] as follows:  Visitation between the child and the mother to occur a minimum of one time every four (4) months for a minimum of (1) hour in a therapeutically supervised setting  . . .  with the cost to be paid by the mother.  Upon the mother's choice of a supervised visitation monitor she shall contact the department, and the department in turn shall coordinate with the [visitation monitor] and the guardians with the date and time of the visitation.  The foster parents shall transport [the minor] to and from the visits.  *The child shall have the right to refuse to visit* and the child's wishes as to visits shall be considered."  (Italics added.)

At the hearing, the minor testified that he wanted guardianship because it would be more stable and he would be happy.  He said he had not visited with mother recently because she "called the cops on me on my birthday and came at our house, [and] stalked us . . . ."  He wanted her to stop breaking the rules.  The minor said he was willing to see mother "When it's time" but was unable to say when that would be.

The juvenile court indicated it would adopt the recommended findings and orders but was "struggling" with the wording of the visitation order.  The court wanted to make modifications to the proposed order to allow the frequency of visits to *in*crease if the minor so desired.  The court crafted the visitation order orally while on the record, referring to the social worker's written recommendation and making modifications as it carefully worked through the provisions.  While doing so, the court read into the record certain of the recommended provisions, including that:  "The child shall have the right to refuse to visit[.]"  But the court concluded:  "I'm not including a refusal in the order at this time.  That's something that somebody would have to come back to court for."

The final written order read:  "Visitation for the mother: The mother shall have visitation with the [minor] a minimum of one (1) time every four (4) months for a minimum of one (1) hour as set forward [*sic*] using an agency visitation monitor; the Department shall provide a list to the mother of the agencies for visitation and the name

3

and phone number of the monitoring guardianship social worker for DHHS to schedule the visits.  The Department shall coordinate the visits.  The Guardian shall provide transportation for the visits.  The wishes of the child shall be considered with regard to increased visits or a less restrictive setting if the child chooses to as he gets older."

## DISCUSSION

Mother argues the juvenile court's oral pronouncement regarding the visitation order improperly delegated the right to refuse visits to the minor.  Her argument is based on what she refers to as the court's "oral order," which she argues controls over the written order that the court issued immediately after the hearing.  But a careful review of the record makes clear that, as we have described, the juvenile court was merely reading the social worker's recommendation into the record at the time it read the language to which mother now objects.[2]  This provision was not part of any oral order, nor was it part of the written order that resulted from the juvenile court's careful consideration of the recommendations and viewpoints expressed at the hearing.    We agree with both parties that if the juvenile court orders a permanent plan of guardianship, the court "shall also make an order for visitation . . . unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child."  (§ 366.26, subd. (c)(4)(C).)  In making visitation orders, the court can properly

---

[2]  Mother did not object to the challenged language in the juvenile court.  Had she objected, the court could, at that time, have easily clarified that it was merely going through the recommended language on the record, and not actually adopting that particular recommendation.  In fact, the court later made this clear when it indicated it was *not* "including a refusal order," as we have detailed *ante*.  We do not criticize mother's failure to object below; as we explain *post*, the juvenile court's oral discussion of modifications to the proposed orders was not in error, thus no objection was warranted.  Nevertheless, mother's failure to object forfeits her claim of error on appeal.  (See, *inter alia*, *In re Dakota H.* (2005) 132 Cal.App.4th 212, 221-222.)  However, we elect to address and resolve her substantive claim to ensure that the juvenile court's orders are correctly interpreted in this proceeding.

delegate "the ministerial tasks of overseeing the right as defined by the court. . . . Such matters as time, place, and manner of visitation do not affect the defined right of a parent to see his or her child and thus do not infringe upon the judicial function." (*In re Jennifer G.* (1990) 221 Cal.App.3d 752, 756.) "Only when a visitation order delegates . . . the absolute discretion to determine whether any visitation occurs does the order violate the statutory scheme and separation of powers doctrine." (*In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1374; see also *In re Randalynne G.* (2002) 97 Cal.App.4th 1156, 1164-1165.)

Here, as we have explained, it is clear that the juvenile court reviewed the recommended visitation order, reading some portions out loud in open court. It is also clear that, before the hearing concluded, the court *specifically excised* the refusal provision from the visitation order. The subsequent written order conforms to any oral pronouncement, to the extent that the court's crafting the written order out loud on the record (presumably to benefit the parties and give them the opportunity to object or assist or both) can be considered an oral order. The court at no time delegated to the minor the ability to refuse all visits. The visitation order is valid.

## DISPOSITION

The orders of the juvenile court are affirmed.

        DUARTE        , J.

We concur:

      RAYE        , P. J.

      MAURO        , J.