Filed 6/29/15  In re Joshua B. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re JOSHUA B., a Person Coming Under the Juvenile Court Law. | B258694 (Los Angeles County Super. Ct. No. DK02410) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. G.B, Defendant and Appellant; M.B., Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Marilyn Kading Martinez, Commissioner.  Affirmed.

Amy Z. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Respondent.

No appearance for Plaintiff and Respondent.

_____

Upon terminating its jurisdiction in this matter, the juvenile court issued an "exit" order conditioning a father's visitation upon his payment for the services of a professional monitor, in the event the current monitor chose not to continue serving in that capacity. The father argues that because he cannot afford to pay for the monitor, the order renders his right to visitation illusory. We find no error, and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Joshua B. (born April 2009), the subject of this appeal, is the son of appellant G.B. (father) and respondent M.B. (mother). During the parents' six-year marriage, mother claimed that father verbally and physically abused her, and threatened to shoot her on several occasions. The final incident occurred in December 2010, when father cursed at the maternal grandmother (with whom the family lived), hit mother on the head and arm when she was a passenger in a car he was driving, and threatened to shoot her in the back. Mother obtained a restraining order, and initiated dissolution proceedings in January 2011. Mother claims that father declared bankruptcy and ceased paying child support sometime in 2011. He consistently treated her with hostility, and refused to cooperate or coparent with her in a civil fashion.

The incident which precipitated this dependency proceeding occurred in early November 2013. Father, who has a history of drug and alcohol abuse, was under the influence of alcohol. Father's companion, Diana X., Joshua B. and Joshua B.'s five-month-old half-sister were in the car. Father, who claimed to have "blacked out" due to excessive alcohol consumption, became belligerent and grabbed the steering wheel while Diana was driving. When Diana pulled over and stopped the car, father struck her with his fists causing swelling and bruising, and tried to push her out of the car. Father was arrested for domestic violence, incarcerated and released on November 12, 2013. Diana denied that father had ever before engaged in domestic violence against her, although she

told mother he had been physically abusive during her pregnancy. In late November, father was arrested again—for public intoxication and fighting at a football game.

Mother told respondent Department of Children and Family Services (DCFS)[1] that in summer 2012, father totaled a car while driving under the influence shortly after driving to drop Joshua B. off at her house. Four-year-old Joshua B. told DCFS he had seen father try to push Diana out of the car, knew what it meant to be "drunk" and knew his father drank a lot of beer. He said his father and Diana fought often and he was afraid of his father's fighting. DCFS reported that father had a lengthy history of methamphetamine use. Father denied that he had any drug-related problems, but acknowledged abusing alcohol, and had enrolled in a 12-step program. Mother denied knowing of father's drug use until Diana told her about it in November 2013.

DCFS filed a Welfare and Institutions Code section 300[2] petition regarding Joshua B. on November 21, 2013.[3] The detention hearing was conducted the same day. The juvenile court issued a restraining order against father, prohibiting him from contacting mother, her parents or Joshua B. (except during monitored visits at DCFS's offices or with a DCFS-approved monitor). Diana's aunt, Marie F. agreed to serve as the monitor for father's visits.

A combined jurisdictional/dispositional hearing was conducted on January 22, 2014, and the amended petition was sustained. In its report for that hearing, DCFS reported that the father had "clear issues with alcohol and anger management which have led to . . . ongoing domestic violence." DCFS reported several instances of domestic violence by father against mother and Diana, and threats to shoot each of them. Father admitted having consumed large amounts of alcohol to the point of blacking out while

---

[1] DCFS does not take a position on the issue of a professional monitor.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[3] The petition was later amended to add allegations (not at issue here) related to Joshua B's half-sister.

caring for Joshua B., and also to engaging in domestic violence against Diana on November 3, 2013. Joshua B. was declared a juvenile court dependent and placed in mother's care, the temporary restraining order (TRO) was permitted to expire and father's monitored visitation was continued.

On May 29, 2014, father drove into a fence and was arrested for driving under the influence. He received a DUI conviction and was incarcerated.

In a July 23, 2014 report, DCFS observed that Joshua B. and mother shared a strong mutual attachment, that the child was content in his living environment and that mother consistently met the child's physical, educational, emotional and social needs. Joshua B., who had been diagnosed with attention deficit hyperactivity disorder, was under the care of a therapist and psychiatrist, but developmentally on target. DCFS reported that father had enrolled in parenting, anger management and domestic violence programs, and that he continued to struggle with sobriety.

At the hearing on July 23, mother informed the court that the non-professional monitor had not been able to control father during visits. Father had mouthed profanities at her and she believed he had frightened Marie, who was no longer willing to monitor his visitation with Joshua B.

Father was given monitored two-hour visits, at least twice per week. The court ordered that father's visits be monitored by Marie or, at father's expense, by a professional monitor. Father argued that after paying child support, he would be left with "little to no money," and objected to the requirement that he bear the full cost of a professional monitor. He asked the court to let mother choose a monitor. Mother objected. She argued that she should not be required to pay for a monitor because it was father's conduct, not hers, that posed risk to Joshua B. and necessitated the monitor. She also observed that father's domestic violence against her prevented her from choosing a monitor, and pointed out that Marie has been unable to control father's behavior and was afraid of him. Mother requested a professional monitor. The court denied father's request, and found it reasonable to require him to pay for a professional monitor in the event Marie ceased serving as monitor. On July 25, 2014, the juvenile court terminated

4

jurisdiction with a custody (exit) order in place, giving mother sole legal and physical custody of Joshua B.

## DISCUSSION

Father concedes that it was appropriate for the juvenile court to require that his visitation be monitored. He takes issue, however, with the order requiring him to bear the full expense of a professional monitor. He argues that, because he cannot afford to pay the monitor, the order effectively deprives him of continued contact with Joshua B. and renders his right to visitation illusory. We disagree. We find father has not shown an abuse of discretion by the juvenile court, or that its order requiring him to pay a professional to monitor his visits was not in Joshua B.'s best interests.

1.      *Standard of review and controlling principles*

We review juvenile court custody and visitation orders for abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318; *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) The test is whether the juvenile court exceeded the bounds of reason. If two or more inferences can reasonably be deduced from the facts, we lack the authority to substitute our own inferences and decision for those of the juvenile court. (*In re J.N.* (2006) 138 Cal.App.4th 450, 459.) "'[T]he juvenile court, which has been intimately involved in the protection of the child, is best situated to make custody [and visitation] determinations based on the best interests of the child.'" (*In re Chantal S.* (1996) 13 Cal.4th 196, 206 (*Chantal S.*).)

When a juvenile court terminates its jurisdiction over a dependent child, it has the authority to make "exit orders" regarding custody and visitation. (§ 362.4.) The standard for imposing conditions on parental visitation is whether it is in the best interests of the child. (*Chantal S.*, *supra*, 13 Cal.4th at p. 208.) The juvenile court's exit orders are transferred to the family court action involving the child and remain in effect until modified or terminated by that court. (*In re A.C.* (2011) 197 Cal.App.4th 796, 799*; In re Roger S.* (1992) 4 Cal.App.4th 25, 30.) "Although both the family court and the juvenile court focus on the best interests of the child, the juvenile court has a special responsibility to the child as *parens patriae* and must look at the totality of the child's circumstances."

5

(*In re Roger S.*, at pp. 30–31.)  Accordingly, section 362.4 implicitly authorizes the juvenile court to make collateral orders if those orders are reasonably related to its custody and visitation orders.  (*Chantal S.*, at p. 204; *In re Randalynne G.* (2002) 97 Cal.App.4th 1156, 1166 [the juvenile court may impose "'conditions or requirements to further define the right to visitation in light of the particular circumstances of the case before it'"].)

2.      *Father has not shown the court abused its considerable discretion*

Father contends that by requiring him to bear the full expense of a professional monitor, the juvenile court undermined the Legislative mandate that children of parents whose relationships have ended maintain frequent and continuing contact with both parents.  He argues the effect of the court's order is that he will be unable to visit Joshua B. because he cannot afford to pay for a monitor.

We find *Chantal S.*, *supra*, 13 Cal.4th 196, instructive.  In *Chantal S.*, the juvenile court found father had "considerable baggage" (i.e., a recent finding of parental unfitness) at the time it made its exit orders which necessitated imposing certain conditions on his visitation with the child.  (*Id*. at p. 209.)  The California Supreme Court affirmed an order requiring that before visits were permitted, the father was required to participate and make satisfactory progress in individual psychotherapy (as determined by his therapist), and provide a release permitting his therapist and to confer with the child's therapist regarding father's therapeutic progress and recommendations for treatment.  In addition, visits were to take place in the office of and be observed by the child's therapist, whom father was required to pay at the outset of each visit.  (*Id*. at p. 202.)  The court found the collateral orders were within the juvenile court's power and appropriate under the circumstances in order to protect the child best interests.  (*Id*. at pp. 214–215.)

Here, father's abusive and endangering conduct before and throughout the dependency proceeding was relevant to the court's determination to require father to retain a professional monitor, and supports the imposition of that condition.  Marie, the only other approved monitor, may no longer be willing to perform that service.  Father acknowledges that monitored visitation is necessary.  His history of verbal and physical

6

abuse, intimidation of the current monitor and ongoing problems with anger management and alcohol and substance abuse, provide ample support for the juvenile court's conclusion that visits should be overseen by a paid professional. Father has demonstrated extremely poor judgment regarding his children's well-being, as evidenced by the single incident during which he grabbed the steering wheel while Diana was driving with Joshua B. and his infant sister in the car, and his drunken, physical attack on her in the children's presence. The exit order requiring a monitor is premised on a finding that father continues to pose an active threat to Joshua B. Accordingly, it was appropriate for the court to require father to shoulder that cost. There is no indication that the court's requirement of a professional monitor was imposed to "punish" father. Rather, it reflects the court's concern for protecting the child.

As in *Chantal S.*, *supra*, 13 Cal.4th 196, the juvenile court here acted within its discretion to condition father's visitation upon his payment of a professional monitor, if Marie was unwilling to continue to serve in that capacity. Given the family's history, it was not unreasonable for the juvenile court to conclude that Joshua B.'s physical safety and emotional well-being during visits with father could only reasonably be assured if that visitation remained monitored, and to require father to bear the expense of a professional capable of performing that task. The court did not abuse its discretion in denying father's request to have mother choose a monitor, or to bear some of the expense of a professional. The record contains no evidence that mother was able or willing to find someone to serve as monitor. Moreover, given the evidence that the previous non-professional monitor was intimidated by father and unable to control his inappropriate behavior, the court reasonably concluded that a professional with skills equal to that task was in order.

Finally, although father pleads poverty, the record contains no evidence regarding his ability to bear the expense of a monitor. It would be speculation for this court to

conclude, based on this record, that father lacks the means to pay for a monitor.[4]  If as father claims, he lacks the resources to afford both child support and the monitor, he remains free to seek modification of the order in the family court.  "[S]ection 362.4 expressly contemplates that the family court may modify [a] juvenile court[] [exit] order."  (*Chantal S.*, *supra*, 13 Cal.4th at p. 213; *In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712; § 362.4.)

**DISPOSITION**

The order is affirmed.

NOT TO BE PUBLISHED.


                                        JOHNSON, J.


We concur:


          ROTHSCHILD, P. J.


          CHANEY, J.

---

[4] The record states only that father works as a laborer for a public agency.