Filed 2/17/16  In re E.E. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re E.E., et al., Persons Coming Under the Juvenile Court Law. | D068547 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. LUZ J., Defendant and Appellant. | (Super. Ct. No. J519168 A, C) |

APPEAL from an order of the Superior Court of San Diego County, Sharon Kalemkiarian, Judge.  Affirmed.

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Paula J. Roach, Senior Deputy County Counsel, for Plaintiff and Respondent.

Dependency Legal Group of San Diego, Tilisha Martin, Carolyn Levenberg and Beth Ploesch for Minor.

Luz J. (Mother) appeals from a juvenile court visitation order issued after the court assumed dependency jurisdiction over her children. Mother contends the court improperly delegated its authority to determine the nature and frequency of her visits with her 12-year-old son (E). We reject Mother's contentions and affirm.

FACTUAL AND PROCEDURAL SUMMARY

Mother has three children; each has a different father. Mother challenges the trial court's visitation ruling only as to the oldest child (E). We therefore omit facts relating to the other children.[1]

In March 2015, the San Diego County Health and Human Services Agency (Agency) filed dependency petitions alleging 12-year-old E and his two younger sisters were at substantial risk of physical harm if they remained with Mother. E's petition alleged that Mother and her current spouse (E's stepfather) had engaged in mutual acts of domestic violence while E was present. The supporting documents also contained information showing Mother abused drugs and alcohol and had attempted to jump out of a vehicle while she was driving and while E was in the car.

---

[1] Mother also filed a notice of appeal as to her youngest daughter, but she asserts no error pertaining to this daughter. We thus dismiss Mother's appeal as to her daughter.

After a detention hearing, the court found a prima facie showing Mother was unable or unwilling to properly care for E, and continued care in the home was contrary to E's welfare. The court stated these findings were based "primarily on the evidence in the report showing issues of domestic violence and substance and alcohol abuse, endangering the health, safety, and welfare of the children." The court placed E with his paternal aunt and uncle. E's father (Father) had been in prison for a manslaughter conviction since E was an infant. The court ordered that Mother be provided supervised visitation with E.

At a hearing held the next month, the court found by clear and convincing evidence the jurisdictional allegations to be true. (Welf. & Inst. Code, § 300, subd. (b).) At the hearing, the Agency indicated its intent to continue E's placement in the paternal relatives' home where E was doing well. Mother challenged this placement, requesting E be placed with E's stepfather's father. The court set a contested disposition hearing for May 28.

At the May 28 hearing, Mother's counsel was present but Mother did not appear (although she had received notice). E was present with his counsel. Father was present with his counsel. The court stated it had read and reviewed the detention, jurisdiction/disposition, and updated reports. These reports summarized the violence that had occurred in E's presence while he was living with Mother; the fact that E had been a victim of some of the violence by his stepfather; Mother's alcohol and substance abuse; and Mother's inappropriate behaviors towards her children.

3

In her most recent report, the Agency social worker recommended that Mother's visitations with E occur only in therapeutic settings because the recent visits have had a negative effect on E and his emotional stability. According to the social worker, Mother had missed numerous visits causing emotional stress for E, and when Mother did visit, she acted inappropriately and had no insight into the harm she has been causing E. Mother's inappropriate actions included discussing adult topics with him, telling him he needs to lose weight, and suggesting E was to blame for breaking up the family. After these visitations, E became depressed, felt negative about himself, and acted out. According to the social worker, Mother is not stable, and "has not taken any responsibility for her actions or any statements that she has made towards E . . . ."

At the hearing, the social worker testified (by a stipulated offer of proof) that Mother had missed four recent scheduled visits. The social worker said E is in therapy and is reluctant to continue in-person visits with Mother, but he is willing "to do supervised phone calls and supervised Skype visitation . . . ." The social worker also suggested Mother send letters and drawings to E.

Based on this record, the Agency's counsel requested the court to "order supervised visitation with discretions," noting the record showed "supervised visitation for now is the phone calls and the letter writing and Skype . . . and we are working on the [in]-person component . . . supervised visitation."

Mother did not present any affirmative evidence. But Mother's counsel disagreed with the Agency's plan to begin with Skype visits and urged the court to immediately order "supervised in-person visitation between her and [E]." Counsel argued:

4

"It is very important to [Mother] that [she] see her son face-to-face . . . and that they have an opportunity to begin repairing their relationship. [¶] She is in agreement with conjoint therapy, given the facts of this case; that makes a lot of sense, but it would be detrimental to this family's ability to reunify, to the minor, and would be unfair to my client to at this point, simply stop face-to-face visitation. . . . [¶] And unless there's some legal detriment that should prevent face-to-face contact it is always a good idea. In this case, it certainly is. Skype contact and letters and phone calls are great. But we believe that this mother and this son should see each other frequently to begin the process of healing at this stage."

Mother's counsel also said she "understand[s] where [E is] coming from [in not wanting in-person visitations], but children aren't really the ones who get to make decisions in this court about the extent of contact with their parents."

E's counsel responded that he agreed "the case law is really clear . . . that a minor doesn't get to delegate or choose the visits." But he asserted the proposed plan is not based on E's preferences and instead reflects an attempt to meet E's current mental health needs. E's counsel urged the court to adopt the Agency's plan, noting it contains flexibility to meet changing circumstances of the mother-son relationship:

"The Court would be offering supervised visits with some modality of those visits. And at this juncture, we also have to pay attention to the emotional needs of the minor [referring the court to the social worker's supplemental report].

"And . . . I certainly would hope that with conjoint therapy and . . . Skype or phone visits, that that relationship gets rebuilt. The Court is not creating a barrier to the mother's ability to visit the minor by allowing those visits and somehow saying, okay, let's work with baby steps at this time and work that relationship up to a point where the face-to-face visitation can be beneficial to all."

After considering the evidence and arguments, the court agreed with the Agency that visits should begin on a limited electronic basis and that in-person visits could then

5

resume once the relationship improves or stabilizes.  In explaining its reasoning, the court stated it agreed that E could not be in charge of the visitation decision, stating:  "It is never a good idea to let kids be in control of what happens because you're a kid."  But the court made an express finding that "it would be *abusive* at this point to force [E] to see his mother in a direct face-to-face supervised visit because I do believe, based upon the evidence that I have, that her behavior vis-à-vis [E], has been *very harmful and disturbing*."  (Italics added.)  The court said, "I also believe [Mother] loves him and she wants to see him and she wants to have interaction, but the plan as laid out makes sense, and that's what I'm going to order."  The court concluded:  "So the visitation between [E] and his mom will be supervised.  At this time it will be phone calls, Skyping, letters and photos that will be sent to the social worker.  And then upon the recommendation of . . . E's therapist, we can go to some family therapy."  The court also stated it would add a drug testing component to Mother's reunification plan.

At the end of the hearing, the court found that clear and convincing evidence supported E's removal from Mother's custody under applicable statutes.  (See Welf. & Inst. Code, § 361, subd. (c)(1).)  The court ordered that Mother's visits with E be supervised, and that the Agency social worker would have discretion to permit unsupervised and/or overnighkt visits with 60-day advance notice to E's counsel.  The court also stated:  "[W]e want to be sure it is clear that the visitation will be [initially] supervised with his mother as for the terms we have already laid out.  Only in-person visits upon a recommendation by the therapist to the social worker to move to that next level.  *And I give the social worker discretion to do so*."  (Italics added.)

6

After the court made these rulings, the court asked whether counsel had any questions. Mother's counsel responded: "Your Honor, does the Agency have discretion to begin providing in person visitation between [E] and my client should the Agency and [E] agree to it?" The Court replied: "Yes absolutely. And the standard discretions to lift supervision and allow overnight visits with notice, 60-day trial visit with concurrence. *But as to mom's supervised visits, yes, the Agency has discretion when it feels it is appropriate to do so.*" (Italics added.)

Regarding visitation, the written minute order stated: "Mother may have supervised phone contact, and may send the minor letters and pictures through the social worker. *Mother may have supervised in-person visits only when it is recommended by the therapist to move it to that level.* The Agency has discretion to allow Mother unsupervised and overnight visits with notice to minor's counsel, and a 60-day trial visit with concurrence of minor's counsel." (Capitalization omitted, italics added.)

## DISCUSSION

We begin by stating what is not at issue in this appeal. Mother does not challenge the court's findings that: (1) clear and convincing evidence supported that E should be removed from her custody because there was a substantial risk of danger to his physical health and/or that he was suffering severe emotional damage in her care, and there are no other reasonable means to protect E; (2) it would be "abusive" to E to require in-person visits between E and Mother (at the time of the hearing); and (3) Mother's visitations with E must be supervised until the Agency social worker determines unsupervised visits are appropriate.

Mother's primary appellate contention instead is that the court erred because it delegated *to the therapist* the decision as to when to elevate Skype visitations to supervised in-person visitation. (See *In re Donnovan J.* (1997) 58 Cal.App.4th 1474, 1476 [impermissible to delegate visitation decisions to therapist].) The Agency counters that the juvenile court made "clear" that it was providing the social worker—and not the therapist—the discretion to "enhance and elevate the mother's visits."

We recognize the court made certain conflicting statements regarding who had the authority to move the Skype visits to supervised in-person visits. At several points, the court suggested that in-person visits were permitted only upon the therapist's recommendation or approval. But at the conclusion of the hearing, after Mother's counsel asked for clarification, the court specifically identified the Agency as the entity that had the authority to make this decision. Viewing the record as a whole and reading the court's statements in context, we conclude the court provided the Agency social worker (and not the therapist or E) the discretion to elevate the Skype visits to in-person visits, and that this discretion was to be exercised after consulting E and E's therapist. To the extent the written order did not capture this clarification, the court's oral pronouncements control. (See *In re A.C.* (2011) 197 Cal.App.4th 796, 800; *In re Aryanna C.* (2005) 132 Cal.App.4th 1234, 1241 & fn. 5.)

Based on this conclusion, there was no improper delegation. The juvenile court has the sole authority to decide whether a parent should have visitation rights with a dependent minor. (*In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1373 (*Moriah*).) But the court "may delegate to the . . . [county] social worker the responsibility to manage the

8

details of visitation, including time, place and manner thereof. . . . Only when a visitation order delegates to the . . . county welfare department the absolute discretion to determine whether any visitation occurs does the order violate the statutory scheme and separation of powers doctrine." (*Id.* at p. 1374; accord *Christopher D. v. Superior Court* (2012) 210 Cal.App.4th 60, 72-73 (*Christopher*).) In making these time/manner/place visitation decisions, the child protective agency is obligated to "act[ ] as an arm of the court in the best interests of the minor" (*In re Danielle W.* (1989) 207 Cal.App.3d 1227, 1234), and is fully "accountable to the court" (*In re Randalynne G.* (2002) 97 Cal.App.4th 1156, 1166). After the court has found visitation appropriate, for judicial economy and practical reasons a child protective agency is best suited to implementing the order and making necessary modifications in the face of often rapidly changing circumstances. (See *In re Brittany C.* (2011) 191 Cal.App.4th 1343, 1356 (*Brittany*); *Moriah, supra*, 23 Cal.App.4th at p. 1376.)

Under these principles, the court properly delegated to the Agency the authority to decide when it was appropriate to elevate the electronic visits to in-person visits. Because this delegation concerned the manner of the visits (in-person or electronic), the court could properly defer this decision to the social worker based on the parties' progress and the changing needs and interests of both Mother and E. Additionally, the court had a reasonable basis to require the Agency to consider the wishes of E and the opinions of his therapist in making its determination. The court and all parties understood the court's visitation order was made with the stated goal of reestablishing a positive relationship between Mother and E, while protecting E from further abusive conduct. Input from this

9

older child and his therapist would only promote better decisionmaking to reach these objectives. (See *Brittany, supra*, 191 Cal.App.4th at p. 1358.)

To the extent Mother argues the trial court did not have the discretion to initially order Skype visitation rather than in-person visitation, the argument is without merit.

A juvenile court's visitation orders "must be viewed in the context of the family dynamics in play." (*Brittany, supra*, 191 Cal.App.4th at p. 1356.) In this case, the minor was a preteen who did not want to spend time with Mother because she had been emotionally abusive to him. The social worker and therapist concurred that it would be detrimental to this child to continue the in-person visitations until Mother gained some insight into her behavior that was damaging her son. The record makes clear that all parties were attempting to repair the relationship by taking "baby steps" to promote healthy, structured contact between mother and son. The court acted well within its discretion in concluding that this would best be achieved by starting with electronic communications.

Mother devotes large portions of her appellate briefing to discussing the qualitative differences between in-person visits and electronic visits. She notes that electronic forms of communication often "lack the intimacy that only personal, one-on-one contact can convey." She asserts: "Personal contact allows the full range of human sensory power, including touch, smell, and even taste to come into play, whereas electronic communication can, at best, include only sounds, and sometimes, sight."

Although accurate, these observations do not demonstrate error in this case. The court found that at the time of the hearing allowing in-person visitation—even if

10

supervised—would negatively impact E's mental health. Based on this finding, the court could have ordered no visitations until Mother was able to terminate her inappropriate behaviors when in E's presence. (See *In re Mark L.* (2001) 94 Cal.App.4th 573, 580-581; see also *Brittany, supra*, 191 Cal.App.4th at p. 1357.) But the court wanted to provide some form of contact to promote the long-term relationship. The court's decision to do so by permitting electronic communications was not an abuse of discretion. Although we agree electronic visits (whether on a computer/phone screen or by telephone) are not the same as personal visits, we reject Mother's argument that a court has no discretion to order the more limited electronic visits under any circumstances. A court may order this form of communication if the evidence shows the visits are in the child's best interests and would promote reunification goals.

We also reject Mother's contention that because electronic forms of visits are different from in-person visits, a court cannot delegate the decision when to elevate those visits to an Agency social worker. Mother does not challenge the social worker's authority to decide when in-person supervised visits should change to unsupervised overnight visits. There is no logical distinction between this decision and the decision to move from electronic visits to supervised in-person visits.

Mother also contends the court erred because the visitation order was improperly vague as it did not identify the frequency and duration of the Skype visits. This argument is not supported by applicable law. A juvenile court has the discretion to order reasonable visits and to permit the social services agency to decide the frequency and duration of the visits in conjunction with the parent, child, and the child's caretakers.

11

(See *Christopher, supra*, 210 Cal.App.4th at p. 72; *Moriah, supra*, 23 Cal.App.4th at p. 1376.)  The evidence showed that E played on a soccer team and was a 12-year-old who presumably had a busy school schedule.  The evidence further showed that Mother had missed numerous scheduled visits and was difficult to reach.  Although Mother's *counsel* argued that Mother wanted frequent visitation, there was no *evidence* to support this assertion.  She did not attend the disposition hearing to personally assert an interest in visitation or state a preferred visitation schedule.  Given these facts, the court could reasonably decide that the Agency should work out the details of the visitation order to respond to the particular family members' schedules, availabilities, needs, and desires.  If Mother or her counsel believes the Agency is not responding to her needs pertaining to the visitation schedule, Mother has the option of bringing this issue before the court.

                              DISPOSITION

     Order affirmed.


                                                         HALLER, J.

WE CONCUR:


McCONNELL, P. J.


AARON, J.


12