Filed 11/18/22  In re S.A. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re S.A., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D080561 |
| Plaintiff and Respondent, | (Super. Ct. No. NJ15770A) |
| v. | |
| A.P., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Michael Imhoff, Commissioner.  Affirmed.

Christopher R. Booth for Defendant and Appellant.

Claudia Silva, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Katie Abajian, Deputy County Counsel for Plaintiff and Respondent.

In this dependency action, A.P. (Father) filed a Welfare and Institutions Code section 388[1] petition seeking to change the juvenile court's prior order placing his daughter, S.A., with M.M. (Mother) in California. Father asked the juvenile court to instead place S.A. with him in Arizona. The juvenile court denied this request, and Father appealed, contending the juvenile court abused its discretion by finding that he did not carry his burden under section 388 to show new evidence or a change of circumstances warranting the requested change in S.A.'s placement and that the requested placement change was in S.A.'s best interest. We conclude the court did not abuse its discretion and affirm.

I.

FACTUAL AND PROCEDURAL BACKGROUND[2]

A.   *The section 300 petition and detention hearing*

In August 2021, the San Diego County Health and Human Services Agency (the Agency) petitioned the juvenile court under section 300, subdivision (b), on behalf of minor S.A. The Agency alleged there was a substantial risk S.A. would suffer serious physical harm or illness due to Mother's delusional and paranoid thoughts and her recent attempt to run into oncoming traffic with S.A. and S.A.'s younger half-brother, E.M.[3]

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise designated.

[2]    "In accord with the usual rules on appeal, we state the facts in the manner most favorable to the dependency court's order." (*In re Janee W.* (2006) 140 Cal.App.4th 1444, 1448, fn. 1.)

[3]    E.M. is also the subject of the juvenile court proceedings, but because this appeal concerns only S.A., we limit our discussion of E.M. accordingly.

At the detention hearing, the juvenile court ordered that S.A. be detained with Mother in San Diego under various conditions, including that Mother reside in maternal grandmother's home, not be unsupervised with the children outside of the home, and follow all court orders regarding visitation with Father. The court also granted Father—who lived in Arizona—unsupervised visitation with S.A. every weekend with weekly visitation by telephone.

B.    *The jurisdictional and dispositional hearings*

At the continued jurisdictional hearing, the court made a true finding on the petition by clear and convincing evidence, and Father set a contested dispositional hearing regarding S.A.'s placement.

At the November 8, 2021 contested dispositional hearing, the court considered each of the reports in evidence, including the Agency's jurisdiction/disposition report and October 2021 addendum report. In its reports, the Agency recommended that S.A. be placed with Mother on the condition that Mother continue to follow court orders from the detention hearing and that Father receive enhancement services. The Agency's addendum report reflected that S.A. had said she felt safe at Mother's home, felt safe with Father, and that she did not know how she felt about visiting Father in Arizona.

Mother, the Agency, and S.A.'s counsel asked the court to order the case plan as written, including the Agency's recommendation that S.A. be placed with Mother. Father's counsel stated that Father had previously anticipated asking for placement, but he did not do so at the hearing and did not voice any opposition to the Agency's recommendation of placement with Mother. Based on the evidence, the court placed S.A. with Mother, pursuant to section 361(a). The court also amended the visitation schedule in response to Father's request for two fewer weekends per month with S.A., due to the

expense and burden on Father of traveling from Arizona to see S.A. in California.

C.   *Special hearings regarding visitation*

The court held special hearings on November 17, 2021 and April 6, 2022 to address Father's complaints about Mother obstructing his visitation. During the November 17, 2021 hearing, Father's counsel expressed concern that after Father had driven from Arizona to California for a recent visit with S.A., the child was unavailable and Mother and S.A.'s phones were turned off. The court ordered that Father would have visits with S.A. every other week and that he would pick up and drop off S.A. from school.

At the April 6, 2022 hearing, Father's counsel stated that two weeks before, Father tried to pick up S.A. from school, but Mother arrived at the same time, physically took S.A. from him, and made comments about not doing anything that was not spelled out in a court order. This incident was also outlined in the Agency's April 6, 2022 supplemental report. In its report, the Agency stated that despite Mother's lack of cooperation with visitation, the Agency still believed it was in S.A.'s best interest to remain in her current placement because S.A. had always lived with Mother and the maternal family, attended school in San Diego, had friends both in her school and neighborhood, and her main support and connections were in San Diego. The report further stated that S.A. enjoyed visits with Father but that she indicated that she wanted to live only with Mother.

Mother's counsel stated that he had discussed the situation with Mother and that she would comply with the visitation schedule moving forward. The court then ordered specific times and dates for Father to pick up S.A. from school without Mother's interference and set a hearing for Father's recently-filed section 388 petition.

D.    *Father's section 388 petition and the initial hearing*

In his section 388 petition, Father contended that the court should change its November 8, 2021 order placing S.A. with Mother in California, and instead, place S.A. with him in Arizona.  Father contended this would be in S.A.'s best interest because S.A. "would have the benefit of a relationship with both parents."

As changed circumstances justifying his petition, Father stated that Mother continued to make it difficult for him to visit with S.A. and failed to ensure S.A.'s regular school attendance.  Father attached e-mails substantiating the multiple times—including on November 12, 2021; December 24, 2021; February 26, 2022; and March 25, 2022—during which Mother obstructed his scheduled visits with S.A.  In one of these e-mails, Father also complained that S.A. had "horrible" school attendance and that Mother had not provided a doctor's note for each time that S.A. was absent from school for being sick.  He also attached an attendance sheet reflecting that S.A. was absent from school for 18 out of 120 days (15 percent of the time) while in Mother's custody.

At the May 9, 2022 initial hearing on Father's section 388 petition, Father asked the court to make a prima facie finding on his petition and to set an evidentiary hearing.  Specifically, Father contended that visitation had been a problem for Father "since day one," even prior to S.A.'s juvenile case. He further contended that Mother's failure to comply with the court's visitation order was a change in circumstances sufficient to warrant a prima facie finding because there had been multiple incidents where Father traveled from Arizona to California for his visitation with S.A., but Mother "thwarted" it.

The Agency submitted on the prima facie finding without argument. Mother opposed, contending there had not been a change of circumstances

5

and it would not be in S.A.'s best interest to place her with Father. Mother noted that S.A. had never lived away from Mother; that S.A. had a close bond with her half-brother, E.M., who was also in the home; and that, as reflected in the Agency's report, S.A. stated she did not want even extended visits with Father and instead said that she only wanted two days with Father and then to return to Mother's home. S.A.'s counsel reiterated that it would not be in S.A.'s best interest to separate her from her half-brother.

The court considered Father's section 388 petition, the parties' arguments, and the Agency's reports and found that Father had carried his prima facie burden. The court set an evidentiary hearing on Father's section 388 petition.[4]

E.    *The evidentiary hearing on Father's section 388 petition*

At the June 13, 2022 evidentiary hearing on Father's section 388 petition, Father asked the court to modify its placement order and place S.A. with him in Arizona. He argued that he was available to care for S.A. and that S.A.'s current placement with Mother was a "fictitious placement" because of the condition that Mother could not leave the home unsupervised—which Father contended she had violated. Father further contended that he had a good relationship with S.A. and that S.A. was comfortable visiting him in Arizona. Father argued in the alternative that if S.A. was not removed from Mother, the court should modify the custodial arrangement so that Father would have S.A. during school breaks.

---

[4]    The juvenile court must liberally construe a section 388 petition in favor of its sufficiency for the granting of an evidentiary hearing. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) The petitioner need not show a probability of prevailing on the petition at a full hearing; rather, the petitioner need only make a prima facie showing to trigger the evidentiary hearing requirement. (*In re Aljamie D.* (2000) 84 Cal.App.4th 424, 432.)

The Agency opposed the petition's request for a change in placement and referred the court to the Agency's May and June 2022 status reports. The Agency's May 2022 report stated S.A. had received weekly counseling services with her school counselor from September 2021 to January 2022. In April 2022, S.A.'s teacher suggested that S.A. would benefit from further counseling services. Mother agreed, and the Agency reported that S.A. was in the process of starting counseling services again with another school counselor. The report stated Mother acknowledged that she had interfered with Father's visitation but indicated it was because she was anxious and worried about something bad happening to S.A., and that she struggled with being separated from S.A.

The Agency's June 2022 report indicated that S.A. initially said she would only like two-day visits with Father and then to return to Mother, but she later expressed an interest in spending extended time with Father if she could "sleepover with" paternal grandmother, whom she liked. The report also stated that earlier in June 2022, Mother started therapy and began taking medication for her anxiety disorder diagnosis.

Like the Agency, Mother opposed Father's petition, arguing that a change in placement was not in S.A.'s best interest. Mother pointed to the Agency's reports showing that S.A. felt safe and comfortable with her, that S.A. wanted to stay with Mother, and that there had not been any safety concerns regarding S.A. being in Mother's care. She stated that S.A. was close with her younger half-brother, who lived in the home, and that S.A. had not spent any substantial amount of time outside of Mother's care. Mother further contended that, as indicated in the Agency's addendum report, she was now in therapy to address her separation anxiety, was taking medication, and was responsive to the Agency.

7

S.A.'s counsel submitted on the changed circumstances prong of Father's petition but opposed the petition on the ground that removing S.A. from her Mother and half-brother, with whom she was close, would not be in S.A.'s best interest.

The court considered Father's petition, the Agency's reports—including its May 9, 2022 and June 13, 2022 addendum reports—and a psychological evaluation for Mother. As to Father's contention that Mother had violated a placement condition by leaving the home unsupervised with S.A., the court reviewed the previous minute orders and stated that S.A. had been officially "placed" with Mother at the November 8, 2021 dispositional hearing and that no conditions were imposed on Mother at that time.[5] The court acknowledged that Mother had "greatly disrupted" Father's visitation with S.A. but observed that Mother was now taking medication and in therapy, which the court believed would "go a long way" toward resolving the visitation issue.

---

[5]     Father disputes this conclusion. He contends that during the detention hearing, the court conditioned S.A.'s detention with Mother on Mother not leaving the home unsupervised with S.A., among other conditions. Father posits that this condition was not merely a condition of detention but was also a condition required for placement with Mother because at the November 8, 2021 disposition hearing at which the court placed S.A. with Mother, the court incorporated "by reference the balance of the recommendations in the dispositional report." In the Agency's dispositional report, the Agency recommended S.A.'s placement with Mother "on the condition that [Mother] continues to follow court orders from [the] detention hearing." As the court observed at the section 388 petition hearing, however, the minute order from the disposition hearing did not specify any particular conditions regarding placement with Mother. As discussed *post*, we need not resolve this discrepancy. Regardless of whether this condition applied at disposition, we conclude the juvenile court did not abuse its discretion in finding that changing S.A.'s placement would not be in S.A.'s best interest.

8

The court granted Father's section 388 petition in part and denied it in part. Specifically, the court granted Father's request for extended visits with S.A. but denied his request for placement. As to placement, the court found that Father had not met his burden to show a sufficient change in circumstances, and even if Father had established a sufficient change in circumstances, it would not be in S.A.'s best interest to place her with Father. Regarding Father's request for extended visits, the court found there had been a change in circumstances—due to S.A.'s good relationships with Father and paternal grandmother—and that granting extended visits would be in S.A.'s best interest.

Father appeals.

II.

DISCUSSION

On appeal, Father challenges the portion of the juvenile court's order denying his section 388 petition's request for placement. Father contends the juvenile court abused its discretion by finding that Father did not carry his burden to show both that a significant enough change of circumstances and/or new evidence justified the change in placement and that placing S.A. with him in Arizona was in S.A.'s best interest. The Agency disagrees and contends that Father failed to show either of these requirements for his section 388 petition.

A.    *Applicable law*

Section 388 allows a parent to petition the juvenile court to modify a placement order due to changed circumstances or new evidence. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317 (*Stephanie M.*).) To prevail on a section 388 petition, the parent petitioning for a change of the placement order—here, Father—generally must show by a preponderance of the

9

evidence both that (1) there is new evidence or changed circumstances warranting a change of the juvenile court's prior placement order and (2) the proposed change is in the best interest of the child.[6] (*Ibid.*) In evaluating a section 388 petition, the juvenile court may consider the evidence in the record as a whole. (See *In re J.M.* (2020) 50 Cal.App.5th 833, 847, citing *In re Jamika W.* (1997) 54 Cal.App.4th 1446, 1450-1451.)

Not every change in circumstance or piece of new evidence can justify modification of a prior order. Rather, "[t]he change in circumstances or new evidence must be of *such significant nature* that it requires . . . modification of the challenged order." (*In re A.A.* (2012) 203 Cal.App.4th 597, 612, italics added.) A sufficient "change in circumstances" also must be "substantial" or "material." (*In re N.F.* (2021) 68 Cal.App.5th 112, 120; *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223.) Similarly, "new evidence" for section 388 purposes must be "material" and must be "evidence that, with due diligence, the party could not have presented at the dependency proceeding at which the order, sought to be modified or set aside, was entered." (*In re H.S.* (2010) 188 Cal.App.4th 103, 105.)

We review the juvenile court's denial of a section 388 petition for abuse of discretion. (*In re Aaliyah R.* (2006) 136 Cal.App.4th 437, 447.) Thus, unless it is clearly established that the trial court made an arbitrary,

---

6      Here, the parties' briefing on appeal is unclear about which burden they contend Father needed to satisfy to prevail on his section 388 petition. The parties sometimes refer to Father's burden as by a preponderance of the evidence, but at other times, they refer to it as one of clear and convincing evidence. Regardless, we need not decide which burden applied here because we conclude that the juvenile court did not abuse its discretion by finding that Father did not make the required showing, even by the less-demanding preponderance of the evidence standard.

capricious, or patently absurd determination, the trial court's ruling should not be disturbed on appeal.  (*Stephanie M.*, *supra*, 7 Cal.4th at 318.)  In other words, there is no abuse of discretion " ' "[w]hen two or more inferences can reasonably be deduced from the facts." ' "  (*Id.* at p. 319.)  Rather, " ' "[t]he appropriate test . . . is whether the trial court exceeded the bounds of reason." ' "  (*Id.* at pp. 318-319.)

B.    *Analysis*

Father contends the juvenile court abused its discretion by denying his section 388 petition's request for placement of S.A.  We are not persuaded.

As to the first requirement for relief under section 388, Father argues that he supported his petition with sufficient "new evidence" and/or evidence of "changed circumstances," including evidence of: (1) Mother's ongoing interference with Father's visitation; (2) Mother's unsupervised time outside the home with S.A., which Father contends violated a condition of S.A.'s placement with Mother; and (3) S.A.'s absences from school without a doctor's note.  Father argues that he carried his burden to show the second requirement for relief under section 388—that placing S.A. with Father was in S.A.'s best interest—because he showed the importance of S.A. having a relationship with both parents.  We address these arguments in turn.

Although Father does not develop his argument that he presented "new evidence" within the meaning of section 388, we agree with Father that some of his evidence concerned incidents that had not yet happened by the time of the juvenile court's November 8, 2021 hearing during which it placed S.A. with Mother.  For example, some of the incidents during which Mother interfered with Father's visitation occurred in the days and months *after* the November 8, 2021 disposition hearing, as did some of S.A.'s absences from school without a doctor's note.  Thus, this constituted new evidence that, even

11

with due diligence, Father could not have presented at the disposition hearing. (See *In re H.S.* (2010) 188 Cal.App.4th 103, 105.)

Nevertheless, Father did not carry his burden to show that placing S.A. with him was in S.A.'s best interest, and thus, we conclude the juvenile court did not abuse its discretion. Father contends that the importance of S.A. having a relationship with both parents—which Father claims can only be accomplished by placing S.A. with him—shows that the requested placement change was in her best interest.[7] But, for several reasons supported by the record on appeal, Father failed to show that a *complete* change in S.A.'s placement was in her best interest. First, Agency reports and testimony indicated S.A.'s preference to remain with Mother, that S.A. had never lived apart from Mother, and that S.A. had a close relationship with her half-brother (who also lived with Mother). Agency reports also stated that S.A. had friends at her school and in her neighborhood, that her support network was in San Diego, that she previously participated in therapy at her school, and that she was in the process of doing so again.[8] Simply put, Father did not show by a preponderance of the evidence that uprooting S.A. from her Mother and half-brother, friends, school, therapy, and support network in

---

[7] At the evidentiary hearing on Father's section 388 petition, the juvenile court acknowledged the importance of promoting S.A.'s relationship with Father and the paternal family by granting Father extended visits with S.A.

[8] The juvenile court also considered that Mother had recently started therapy, which the court believed could improve Mother's ability to co-parent. Hopefully, this positive development will encourage Mother to participate in co-parenting going forward, particularly because co-parenting can only benefit S.A.

12

California to move to Arizona with Father was in her best interest.[9] Thus, the juvenile court did not "exceed the bounds of reason" by finding that placing S.A. with Father was *not* in S.A.'s best interest. (*Stephanie M.*, *supra*, 7 Cal.4th at 318.) Accordingly, because we conclude that the juvenile court's denial of Father's section 388 petition's request for placement was not an abuse of discretion, we affirm.

III.

DISPOSITION

The order is affirmed.


IRION, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.

---

9       We are not persuaded by Father's additional contention that the juvenile court erred because S.A.'s best interests are the functional equivalent of what is "not detrimental." Father is mistaken. In contrast to the authority cited by Father, the present appeal concerns a placement determination, not a visitation determination, and the court did not remove S.A. from Mother. (Cf. *In re Randalynne G.* (2002) 97 Cal.App.4th 1156, 1170 [after child was removed from both parents, holding that an absence of detriment was equivalent to the child's best interests when determining post-guardianship visitation orders].)